### GUFFEY et al. v. SMITH et al.

(Circuit Court of Appeals, Seventh Circuit. August 10, 1917.)

Nos. 2405, 2406.

1. COMPROMISE AND SETTLEMENT ⊜═12—CONSTRUCTION—PRESUMPTION.
   Complainants, who acquired an oil lease, did no development work thereafter. The lessor granted another lease, and appellees, the lessees, having struck oil, complainants asserted rights prior to their lease. Complainants and appellees thereafter entered into an agreement that they should share equally in the seven-twelfths interest in the lease claimed by appellees, that the money held by an oil company should be divided, but

that appellees should not be liable for seven-twelfths of the amount theretofore paid them and others claiming interest under the second lease. It was discovered that appellees' interest previously had been larger, and they had received payments amounting to more than seven-twelfths of the total sum paid last lessees by the oil company. *Held* that, as the purpose of the agreement was to avoid a lawsuit, it must be presumed that the contract forgave appellees for all payments received; it being their contention that the amounts they had received were devoted to the development work.

2. COMPROMISE AND SETTLEMENT ⬥⬤12—CONSTRUCTION.

In a suit involving the construction of a compromise entered into between junior and senior lessees of oil lands, *held*, in view of all of the circumstances and a subsequent agreement between the parties making the compromise, that the junior lessees were excused from liability for all payments made them prior to the agreement.

Appeal from the District Court of the United States for the Eastern District of Illinois.

Suit by Joseph F. Guffey and others against James A. Smith and others. From the decree, denying complainants relief sought, they appeal. Affirmed.

Isaac H. Mayer, of Chicago, Ill., for appellants.

Walter T. Gunn and George F. Rearick, both of Danville, Ill., for appellees.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

BAKER, Circuit Judge. Smith, owner of lands in Illinois, made an oil lease to Guffey and associates. Thereunder no development work was done. Subsequently Smith made a similar lease to Solley and associates. After the junior lessees had struck oil, the seniors began suit for possession and accounting. At this time the junior interests were owned, by Solley and Johnson, seven-twelfths, and by Hennig and Ellis, five-twelfths. Pending a decision in the Supreme Court (237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856), Guffey and associates effected a compromise with Solley and Johnson. During the subsequent accounting hearing against Hennig and Ellis in the District Court, Guffey and associates raised a contention that Solley and Johnson should be made to account for an alleged overpayment by the Ohio Oil Company, which had been purchasing the output of the junior lessees. From a denial of this claim Guffey and associates are appealing.

In the written contract of settlement it was provided:

"Appellants [the Guffeys] and appellees [Solley and Johnson] shall share equally in seven-twelfths of the properties and proceeds thereof; that is to say, appellants shall be entitled to seven twenty-fourths and appellees to seven twenty-fourths in the following moneys and properties:

"(a) The money now held by the Ohio Oil Company, amounting to $42,674.83.

"(b) The net proceeds now or hereafter in the hands of Haskell, receiver."

After paragraphs relating to reciprocal assignments of seven twenty-fourths interests in the leases, filing of stipulations, etc., the contract concluded:

"It is further agreed that the appellees shall not be held liable for seven-twelfths of the $52,330.74 heretofore paid them, Walter Hennig and M. Ellis by the Ohio Oil Company."

Guffeys sent a copy to the attorney of the Ohio Oil Company; he replied that the books of the company showed that Solley and Johnson were entitled to $31,588.92, not $24,893.60, which would be seven-twelfths of the $42,674.83 on hand; and the Guffeys thereupon arranged for a meeting of the widely scattered parties in interest at the office of the Oil Company in Findlay, Ohio.

This controversy respecting the facts of the case is concerned principally with what occurred at Findlay; and the success of the Guffeys' appeal depends upon their ability to establish from the record that they had no knowledge, prior to or at the Findlay meeting, that the Ohio Oil Company had paid to Solley and Johnson before the Guffeys' suit was begun $39,173.85 and not merely the $30,526.23, which was seven-twelfths of the total payments of $52,330.74. From a full examination of the entire evidence, we give a brief summary of the reasons why we find that the master, who heard the witnesses orally, and the District Judge, who overruled the exceptions to the master's report, made no mistake in holding the Guffeys to their stipulation for a dismissal as to Solley and Johnson.

[1] 1. At the time of the compromise Solley and Johnson owned only seven-twelfths of the junior lease. While the record is unsatisfactory as to names, dates, and shares, it is clearly deducible from the record, particularly from exhibits of books of the Oil Company, that various assignments of interests in the junior lease had been made from time to time, and that Solley and Johnson prior to the bringing of the Guffeys' suit and for some time afterwards had owned a larger share than seven-twelfths. To end the lawsuit is the most reasonable motive to ascribe to both parties in making the compromise. As to title, Solley and Johnson then owned seven-twelfths of the junior lease. Against this the Guffeys put seven-twelfths of the senior lease. By division of the two interests the Guffeys obtained half of what Solley and Johnson owned in the junior lease. Viewing clauses (a) and (b) in the light of the above ascribed motive it seems clear to us that the Guffeys intended to take and Solley and Johnson to give one-half of whatever sums were coming from the Oil Company and receiver. It was assumed that, because Solley and Johnson then owned only seven-twelfths of the junior lease, they were entitled to only seven-twelfths of the moneys held up by the Oil Company pending the outcome of the suit. The term "seven-twelfths" was therefore intended to be descriptive of the Solley and Johnson interest in the funds on hand. As to the money that was spent and gone, Solley and Johnson could not divide; but they could go into their pockets to account for half they had received. Against the Guffeys' claim that they should do so, they insisted that nearly all that money had gone into creating the value of the oil leases which were being divided, and that they therefore should not be held to account for the past. Viewing the concluding paragraph in the light in which clauses (a) and (b) have been read, it would seem that Solley and Johnson intended to demand and Guffeys to grant forgiveness of Solley and Johnson's share in the moneys paid by the oil company before suit was instituted. Thus a settlement of the suit, so far as Solley and Johnson were concerned, would be provided for. Other-

wise there would remain to be litigated, not merely whether Solley and Johnson had received more than they were entitled to when the payments were made, but whether they had actually received more than seven-twelfths of the total.

[2] 2. When the attorney of the Oil Company wrote the Guffeys that the books showed $6,695.32 to the credit of Solley and Johnson in excess of seven-twelfths of the total credits, they asked for a meeting at which Solley and Johnson should agree to an interpretation or a correction of the contract so that "seven-twelfths" in clauses (a) and (b) should be taken as descriptive of the actual interest of Solley and Johnson in the funds; and they stated in that letter that the understanding of all parties was that the money paid out by the Oil Company should not be taken into account and that the leases and moneys on hand were to be equally divided. One might reasonably suppose that, in a meeting where the Guffeys were demanding and getting an interpretation or a correction whereby "seven-twelfths" in clauses (a) and (b) meant actual interest, Solley and Johnson would demand and get an interpretation or a correction whereby "seven-twelfths" in the concluding paragraph would mean actual payments. And one might reasonably suppose that, when the Guffeys were acting on notice that Solley and Johnson, though now owning only seven-twelfths, were credited with an excess in the fund accumulated since the lawsuit, they would have inferred that Solley and Johnson might have drawn more than seven-twelfths of the funds distributed before the suit was started.

3. Solley, Johnson, and Hurley (attorney for the Oil Company) are very positive that at the Findlay meeting the correction of "seven-twelfths" in both places in the contract was orally agreed to by all the parties. The Guffeys claim that the correction was made only in their own interest and that the concluding paragraph was not discussed or mentioned. We regard the positive testimony as the more reasonable and more credible. Furthermore, Hurley identified as an exhibit a tabulated statement from the books of the Oil Company, which showed, not only the several credits for the retained moneys, but also the several distributions made before the suit was begun; and he testified that this statement was on the table before the parties and was examined by all. And a copy of this tabulated statement was furnished to Troup, one of the Guffeys' attorneys, more than three months before the compromise agreement was executed.

4. Against the Solley and Johnson version of the Findlay meeting the strongest item is the voucher prepared by Hurley to cover the payment of $15,794.46 then made to the Guffeys. It states that the Guffeys are receiving "the proceeds of one-half of the seven-twelfths working interest oil run from the Smith farms," and are releasing liability for "moneys heretofore paid Solley and Johnson for the seven-twelfths working interest oil run from these farms." But it also states that payment is made in pursuance of the compromise contract and a subsequent understanding thereof, "wherein all matters in difference and litigation between these parties are compromised and settled." And inasmuch as the stated sum, $15,794.46, is greater by $3,347.66 than one-half of seven-twelfths of the money in the hands of the Oil

Company, again it is evident that the parties were using the phrase "seven-twelfths" as descriptive of Solley and Johnson's actual interest, and not as an arithmetical formula for the division of the fund.

The decree is affirmed.

In No. 2406, a companion case, the decree is affirmed.