(No. 30708.—)

BLANCHE WALTER et al., Appellees, vs. SOHIO PETROLEUM COMPANY et al.—(CLYDE E. FRAZIER, Appellant.)

*Opinion filed November 18, 1948—Rehearing denied Jan. 17, 1949.*

WHAM & WHAM, of Centralia, for appellant.

HART & HART, and LAYMAN & JOHNSON, both of Benton, DONOVAN D. McCARTY, of Olney, DON TURNER, of St. Louis, Mo., and McAFEE, GROSSMAN, HANNING, NEWCOMER & HAZLITT, of Cleveland, Ohio, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

Blanche Walter and Vivian Blalack, hereafter referred to as Walter and Blalack, filed suit in the circuit court of Franklin County against Sohio Petroleum Company for an accounting of oil received from a certain oil lease operrated by plaintiffs and Clyde F. Frazier, and against the

latter, who is asserting certain adverse rights in the leases which plaintiffs and Frazier were operating jointly. The prayer of the complaint against Frazier was that the certain claims against plaintiffs' interests in the oil leasehold be decreed unfounded. Frazier filed a counterclaim alleging in substance that by reason of the failure of title of the original lessors of Walter and Blalack, under the terms of the lease he acquired a claim against them for a greater share than he was receiving from the oil company, and prayed a determination of his rights. Before the case came to issue all of the parties directly or indirectly interested in the production of the oil from the particular lease were made parties, and a decree was entered in the case confirming the claims of Walter and Blalack, fixing the relative proportions of oil coming to each, and determining the issue against the counterclaimant Frazier. The issue involved is the claim to a fractional part of an oil-and-gas lease in land, and therefore involves a freehold, thereby authorizing a direct appeal to this court. *Greer* v. *Carter Oil Co.* 373 Ill. 168.

A resume of the facts preceding the contracts or leases involved is necessary to understand the controversy between the parties. Prior to July 12, 1905, James A. Batts owned the southwest quarter of the northeast quarter of section 35, township 6, range 2 east of the third P.M., in Franklin County, Illinois. On that date he sold "all the coal and other minerals underlying" said land to Walter W. Williams, as trustee, who subsequently, on January 4, 1918, conveyed the "coal and other minerals" to Chicago, Wilmington & Franklin Coal Company, hereafter referred to as the C., W. & F. Coal Co. In course of time the surface ownership came into one Edward Rice, while the "coal and other minerals" stood in the name of the C., W. & F. Coal Co., but whether such terms conveyed the oil and gas was not a settled matter at the time of the dispute involved

herein, and the Batts heirs still claimed the oil if not transferred by the deed of the C., W. & F. Coal Co.

In 1940 oil was discovered in paying quantities in the neighborhood of the lands involved. March 25, 1941, the C., W. & F. Coal Co. executed an oil-and-gas lease on said land to E. S. Adkins, which was assigned to Walter and Blalack August 15, 1941. This lease was made upon the assumption that the coal company owned the oil and gas by virtue of a deed years before from Batts. April 1, 1941, the Batts heirs, the original grantor being dead, executed an oil-and-gas lease to Lincoln Coleman covering the same land, which lease was assigned to Walter and Blalack April 21, 1941. There was a minor Batts heir, whose interest was authorized to be leased by the county court. Each of these leases carried an overriding royalty, *viz.*, in addition to the lessor's one-eighth royalty interest an additional fractional charge was placed against the remaining $\frac{7}{8}$ of the oil produced by the working interest, *viz.*, the share coming to Walter and Blalack. Thus the lease from the C., W. & F. Coal Co. carried an override of $\frac{1}{8}$ to Adkins, and that of the Batts heirs an override of $\frac{1}{16}$ of the $\frac{7}{8}$ working interest.

Following the discovery of oil and gas in the locality there was litigation upon the moot question as to who owned the oil and gas under other lands in which the C., W. & F. Coal Co. owned the "coal and other minerals." Pending the final determination of this question by the court, the C., W. & F. Coal Co., owner of mineral deeds to many tracts of land containing the same provision, adopted a policy towards the surface owners and others interested, who were in a position to dispute the effect of the words "coal and other minerals," whereby the royalty interest obtained from oil and gas on such leases was equally divided between the coal company and the parties who would have been the owners of the oil and gas if the

"coal and other minerals" clause should not be held to convey oil and gas. The original lessee of the Batts heirs, *viz.*, Lincoln Coleman, and his assignees Walter and Blalack, and the appellant Frazier, knew of this general policy upon the part of the C., W. & F. Coal Co.

August 8, 1941, Walter and Blalack entered into a contract with Frazier, agreeing to give him an assignment of an undivided $\frac{1}{2}$ interest in a $\frac{7}{8}$ oil-and-gas lease on said land, subject to the overriding royalty interest equal to $\frac{1}{16}$ of $\frac{7}{8}$ of all oil and gas produced payable to Lincoln Coleman. In the meantime Walter and Blalack were negotiating with the C., W. & F. Coal Co. and Adkins to acquire from them an assignment of the Adkins lease of the same property, and, August 15, 1941, they acquired from E. S. Adkins an assignment of the lease made to him by the coal company, subject to an overriding royalty of $\frac{1}{8}$ to Adkins, and an agreement by the C., W. & F. Coal Co. to reduce their royalty from $\frac{1}{6}$ to $\frac{1}{12}$ of the $\frac{7}{8}$, so at the time of the assignment of the $\frac{1}{2}$ interest sold Frazier the entire title to the oil and gas rights of both the Batts heirs and of the coal company was vested in Walter and Blalack, subject to royalties and overriding royalties.

September 8, 1941, Walter and Blalack and their husbands delivered to Frazier an assignment of an interest in the oil-and-gas lease, first describing the undivided $\frac{1}{2}$ of $\frac{7}{8}$ interest in the lease made from the Batts heirs and from Lincoln Coleman, with this proviso: "Subject, However to a proportionate burden of an overriding royalty interest of one sixteenth ($\frac{1}{16}$) of seven-eighths ($\frac{7}{8}$) of all the oil found, produced and saved from said premises." And, also, Walter and Blalack in the same transaction assigned to Clyde F. Frazier the undivided $\frac{1}{2}$ of $\frac{7}{8}$ of the lease made from C., W. & F. Coal Co. to Adkins, also "subject, However, to a proportionate burden of an overriding royalty interest of one-eighth ($\frac{1}{8}$) of all the oil, gas and casinghead gas produced and saved from said prem-

ises," reserved in favor of E. S. Adkins, and subject, also, to a "Proportionate burden of a certain overriding royalty interest equal to one-twelfth ($\frac{1}{12}$) part of all oil, gas and casinghead gas" payable to the C., W. & F. Coal Co.

Walter and Blalack and Frazier operated the oil-and-gas wells upon the said premises for over two years, sold their oil to the Sohio Petroleum Co., and made division orders in accordance with said contracts and assignments. In the meantime the litigation concerning the meaning of "coal and other minerals" was pursuing its way through the courts, and in 1943, in the cases of *Jilek* v. *Chicago, Wilmington & Franklin Coal Co.* 382 Ill. 241, and *Shell Oil Co.* v. *Moore*, 382 Ill. 556, it was definitely held that the words "coal and other minerals" included all oil and gas, and consequently the effect of these decisions would have rendered the Batts heirs' lease void for want of title, as well as the interest of their assigns, except for the fact of the contract with the C., W. & F. Coal Co., by which they obtained an interest in $\frac{1}{2}$ of the oil and gas on the premises.

It was after the decisions of the Supreme Court in the cases mentioned that Frazier became of the opinion that he was entitled to the share of the Batts heirs, which had otherwise failed, and that the contract he had entered into with Walter and Blalack so provided, and if its effect was not to give him a full undivided $\frac{1}{2}$ interest in the lease it should be reformed so as to give it to him. In other words, he now contends that the Batts heirs' title having failed, that Walter and Blalack conveyed to him a $\frac{1}{2}$ of the $\frac{5}{8}$ of the lease, *viz.*, the lessors' $\frac{1}{8}$ plus $\frac{1}{2}$ of their share in the $\frac{7}{8}$ working interest, and that likewise Lincoln Coleman's override of $\frac{1}{16}$ was invalid and could not be collected. This is the substance of the lawsuit, and many ingenious arguments are presented to sustain the claim of Frazier to the interest of the Batts heirs which had failed.

The defendants suggest different defenses in each of the briefs for the different parties; There is (1) the Sohio

Petroleum Company, which purchased the oil from the leasehold under division orders, and under which they paid Frazier the share claimed by him; (2) Walter and Blalack, against whom Frazier is making this additional claim because of their assignment of the interest made by them to him; and (3) the Batts heirs, whom Frazier claims have no interest whatever in the oil-and-gas property. These defenses are different, and, as stated, are covered by separate briefs.

In the main the defense of the Sohio Petroleum Company is that Frazier is estopped to now claim any greater interest than he has claimed for two years preceding the decision of this court in the *Jilek* and other cases, and from accepting payment upon that basis. The defense of Walter and Blalack is that they conveyed by their assignment to Frazier a certain interest in the oil and gas, and that he has at all times, and is now, entitled to receive the same interest he always received. And the Batts heirs' defense is that while their title would have failed had not the C., W. & F. Coal Co. entered into an agreement with them, still under their contract with the C., W. & F. Coal Co., they transferred to Walter and Blalack what the latter transferred to Frazier, and that he has suffered no loss whatever, and certainly is not entitled to receive from them what they obtained by way of compromise from C., W. & F. Coal Co.

At the outset, assuming that the royalty reserved to the Batts heirs and Lincoln Coleman would not be enforcible as a matter of law, it has not been explained to us in any of the briefs how Frazier could acquire title to the Batts heirs' interests which, but for the contract with the C., W. & F. Coal Co., would not exist. It is admitted that under the *Jilek* and *Shell cases* the owner of the oil and gas was the C., W. & F. Coal Co. Had no agreement been made by it and its lessee with the Batts heirs and their lessee, the coal company and its assignees would undoubtedly be en-

titled to all of the oil and gas. A failure of title of the Batts heirs in the oil and gas would leave the title in the C., W. & F. Coal Co. However, previous to the decisions above mentioned the coal company had made a compromise agreement with the Batts heirs, dividing the royalties between them. If the assignment of the Batts heirs conveys nothing then it is very obvious that Frazier has obtained his title through the C., W. & F. Coal Co. by *mesne* assignments through Walter and Blalack, subject to the specified royalties and overriding royalties. Nothing discloses the source of Frazier's claim to the interest given the Batts heirs by the compromise with the C., W. & F. Coal Co.

The appellants discuss at length the lesser interest clause contained in the oil and gas lease of the Batts heirs, as follows: "If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid the said lessor only in the proportion which their interest bears to the whole and undivided fee." We think this clause has no application to the instant case. Here was a disputed title to oil and gas. The first operating lessees, Blalack and Walter, procured a lease from both of the opposing claimants to the oil and gas in the land. The C., W. & F. Coal Co. agreed that the royalties should be divided between the Batts heirs and itself and joined in a lease which had the effect of acknowledging that each of the parties had an undivided one-half interest in the oil and gas, with the first lessee of the coal company reserving his overriding royalty, as did also the first lessee of the Batts interests. When these contracts were concluded the interests of the parties were fixed, and would not be, and were not in any way affected by the decisions of the court as to the effect in other cases of the words "all coal and other minerals."

The assignee of both of these interests made a contract and assignment of lease with Frazier, and assigned to him

precisely what he has been receiving ever since. He has received what he contracted for and is not entitled to any more under this contract unless he should lose something, and he certainly has not lost anything because of the arrangement made between the C., W. & F. Coal Co. and land owners who had sold such interests to it. When the coal company transferred a one-half interest to its royalty rights to the oil and gas to the Batts heirs they acquired as good a title to the one-half portion as the C., W. & F. Coal Co. had before the conveyance of the land had been made. It made no difference how Walter and Blalack acquired title so long as the coal company had the interest agreed to be sold at the time the assignment to Walter and Blalack was made to Frazier. We know of no decision, and none has been cited, which holds an assignee is entitled to enforce the "lesser interest" covenant, merely because owners of a disputed title join together to make a good title to the purchaser. The "lesser interest" has no application here for the simple reason Frazier has not suffered any loss of interest.

Appellant also claims that the contract of August 8, 1941, referred to a *lease* which was designated as a $\frac{7}{8}$ lease, and therefore this indicated that Frazier was to acquire one-half of the oil and gas described in the whole lease of $\frac{8}{8}$, which would be $\frac{7}{8}$ to the lessee and $\frac{1}{8}$ to the land owner. A contract of this type would, of course, make Walter and Blalack liable to pay the lessor's share out of their own pockets. But, there is nothing in the contract or the evidence which indicates a lease of this character was intended. In making this claim appellant fails to call attention to the second half of the sentence, which uses the words "subject to an overriding royalty interest equal to one-sixteenth ($\frac{1}{16}$) of seven-eighths ($\frac{7}{8}$) of all oil and gas produced from said premises, heretofore made to Lincoln Coleman."

Why should the contract for lease be construed to include the entire ⅝ when the entire sentence indicates clearly that the parties were referring to 'the interests acquired by the lessees, Walter and Blalack, from the lessors, and which they had a perfect right to dispose of? Language in contracts is construed according to its actual meaning, and if there has been any action under an ambiguous contract the construction placed upon the same by the parties is of great aid in determining what was intended. (*Groome* v. *Freyn Engineering Co.* 374 Ill. 113; *Purcell Co.* v. *Sage*, 200 Ill. 342; *Walker* v. *Illinois· Central Railroad Co.* 215 Ill. 610.) Frazier was an experienced oil man, and knew it would be only under the most extraordinary circumstances that the owner of the leased land would not reserve a royalty, or that the lessee would assume such burden by assignment of the lease. He was bound to know what was meant by the term "an overriding royalty," as it is a common term in the production of oil. (*Wright* v. *Brush*, 115 Fed. 2d 265; *LaLaguna Ranch Co.* v. *Dodge*, 114 Pac. 2d 351.) We have held that the assignment of an oil-and-gas lease, subject to a royalty or overriding royalty is a qualification upon what is conveyed. *Harley* v. *Magnolia Petroleum Co.* 378 Ill. 19.

In the transfers of fractional interests in oil-and-gas properties confusion sometimes arises, and *Guffey* v. *Smith*, 245 Fed. 106, is an illustrative case. There was a case where there was litigation between the owners of two oil-and-gas leases upon the same property. Guffey, the owner of what subsequently was proved to be the prior lease, after the litigation was well under way, made a settlement with Solley and Johnson, who were the owners of $\frac{7}{12}$ of the lease, which was made first in point of time. The agreement provided that Solley and Johnson instead of having $\frac{7}{12}$ should receive $\frac{7}{24}$, and Guffey receive the other half of the Solley and Johnson interest. The final decision held

the Guffey lease good, and the question arose upon the division of the property as to what Guffey was to receive under the settlement. Not only did it involve the moneys on hand, but the moneys spent by Solley and Johnson in developing the lease, as well as what the $\frac{7}{24}$ applied to, whether the whole of the lease or the $\frac{7}{8}$ working interest. The Court of Appeals analyzed the contract, and held that it was intended that Solley and Johnson demanded, and Guffey granted, forgiveness of the share of money paid to them by the oil company before the suit was instituted, because, thus, the settlement of the suit was entirely provided for; otherwise, litigation would remain.

So it seems here, during the interval between the time of the contract of August 8, 1941, and the assignment of September 8, 1941, the assignors of Frazier obtained all outstanding titles to the oil and gas in controversy, and thereafter transferred to Frazier the interest contracted for. Had he relied upon the contract of August 8, 1941, he would have received only the interest of the Batts heirs, and the result would, of course, have been that he would have received no title at all.

Frazier claims that he should have the contract reformed, but there are insuperable objections to a reformation. In the first place the evidence does not show by the degree of proof necessary that reformation should be granted. (*Tope* v. *Tope*, 370 Ill. 187.) And, in the second place, if the contract were reformed it still would not apply to the interests of the C., W. & F. Coal Co. in the land, but only to the contract for the interest of the Batts heirs, and would be totally ineffective in and by itself.

The fact that Walter and Blalack obtained the rights of the C., W. & F. Coal Co. and included the same in their assignment does not aid Frazier upon his claim for reformation. Ignorance of how the title question would be decided is not a mistake of fact as "where the parties to an agreement enter into it in the face of their conscious present

want of knowledge of facts, which they all thus manifestly conclude would not influence their action or induce them to refrain from entering into the agreement, whatever the facts might be, there is not such mistake of fact as to constitute ground for reformation of the agreement." (*Harley* v. *Magnolia Petroleum Co.* 378 Ill. 19.) From what has been said it would appear that appellant had little equity in his contention, but the defenses urged make the correctness of the circuit court's decree conclusive.

The Sohio Petroleum Company urges that Frazier is estopped to claim an accounting from it, based upon the ground that the Batts heirs never had any interest in the property, and, because of the lesser interest clause in the lease, he is entitled to the royalty coming to the Batts heirs and to Lincoln Coleman. The Sohio Petroleum Company would not purchase the oil from this lease until it had a division order signed by all of the persons interested in the oil, fixing their several respective interests therein. The order is addressed to the company, and reads: "The undersigned warrants that they are the lawful owners of the interests indicated opposite their respective signatures below in oil produced from the following lands in the County of Franklin, State of Illinois:" (Then follow the names of all the parties interested, including C., W. & F. Coal Co., and the various percentages due each.) And a like order was signed by appellant for the oil from the second well upon the same premises.

In each division order the interest of Frazier is computed at ½ of ⅞ of the gross oil, less his share of the overriding royalties, exactly as his interest appears in his assignment. Frazier also claims that he was no party to the correction lease between the Batts heirs, in existence at the time the contract was made, and the one in existence at the time the leases were assigned. The trouble with the first Batts lease was it had no grantee, and if he had received an assignment of that lease he would have received

nothing. And the fact that the second lease executed did not contain the lesser interest clause did not affect him because, as we have pointed out above, what he received was by virtue of the title to the C., W. & F. Coal Co., and not from the Batts heirs.

Some effort was made by appellant to introduce conversations and explanations of what was intended to be included in the assignment, but it is unnecessary to discuss this contention because of the well-settled rule that parol evidence is not admissible to contradict the terms of a contract in writing actually entered into, and particularly against an innocent third party. *Decatur Lumber and Mfg. Co.* v. *Crail,* 350 Ill. 319; *Sterling-Midland Coal Co.* v. *Great Lakes Coal and Coke Co.* 334 Ill. 281; *Stevens* v. *Felman,* 338 Ill. 391, and a multitude of cases from practically every jurisdiction.

The defendants, Walter and Blalack, defend upon the ground that Frazier has received exactly what he contracted for, and even though the title of the Batts heirs would not have been sustained as against the coal company in a suit between them, still, under the contract they had procured from the C., W. & F. Coal Co., Frazier had at all times received precisely what the contract called for.

Some contention is made that Blalack had made statements in a sense upholding Frazier's contentions, but the rule of evidence above adverted to applies to this as an attempt to change the terms of the written contract; and for the further ground that close examination of the testimony of Joe Blalack does not support the contentions made in appellant's brief.

The defenses of the Batts heirs and Lincoln Coleman are along the same lines as those of Walter and Blalack, and as against them it seems to be the contention of appellant that if the contract and assignment of lease were reformed Frazier would have received the ⅛ interest otherwise going to the Batts heirs.

We have pointed out above that no one of the parties has shown how this devolution of title could occur; and further suggested that reformation should not be allowed in this case because the evidence does not substantiate the claim that there was a mistake of fact; and, of course, a mistake of law is not reformable.

We have mentioned these several defenses set out by the appellees in their several briefs, and are of the opinion they are all sound and applicable, but even though there be some doubt in that respect the fact remains that appellant has not disclosed how he becomes entitled to an interest which, but for the contract of the C., W. & F. Coal Co., would have reverted to it, and has not proved his complaint.

There is another circumstance which stands out in this case but has not been argued by any of the parties. It appears from the record that the C., W & F. Coal Co. owned mineral deeds to a great many tracts of land containing the identical clause that was considered in the *Jilek case,* and, under the general policy described in the evidence, undoubtedly made many settlements along the same or similar lines to that proved in this case. To put the construction upon these settlements claimed by appellant would not only be inequitable between the immediate parties, but might have an unsettling effect upon other titles based on like contracts.

We have not examined with sedulous care the exact percentage of interest of each of the parties set out in the decree, because it does not appear questioned by any of the litigants, and hold that the decree of the circuit court was right in awarding relief to the plaintiffs, and was correct also in denying appellant, Frazier, any relief upon his counterclaim.

The decree of the circuit court of Franklin County is affirmed,

*Decree affirmed.*