Park District of Highland Park, Illinois, a Body Politic and Corporate, Petitioner-Appellee, v. Herman Becker, et al., Defendants, William Calvin Merrick, et al., Defendants-Appellants.

### Gen. No. 64–131.

Second District.

June 25, 1965.

Tenney, Bentley, Guthrie & Howell, of Chicago, for William Calvin Merrick and Verne Merrick. Singer, Singer & Singer, of Highland Park (John P. Forester and Mortimer Singer, of counsel), for Max M. Warsaw and Helen C. Warsaw, appellants.

Russell L. Engber, of Highland Park, and Righeimer & Righeimer, of Chicago (Frank S. Righeimer, Jr., of counsel), for appellee.

ABRAHAMSON, P. J.

This appeal is taken from a judgment rendered on a jury verdict in the Circuit Court of Lake County for property condemned by the Park District of Highland Park pursuant to its powers of eminent domain.

The original Petition to Condemn was filed on August 17, 1962 and included eight separate, but adjoining, parcels of land located on the East side of the Skokie Highway in the City of Highland Park. We are here concerned with only two of the parcels, B and C; the other parcels having been acquired by the Park District earlier through negotiated settlements with the owners or as a result of prior litigation.

Both parcels are unimproved, vacant, unsubdivided land zoned by the City for use as single family residences with a minimum area requirement of 40,000 square feet. Skokie Highway is a main traffic artery of four lanes, separated by a median strip. The West

side of Skokie Highway is zoned "Industrial" by the City from the highway to a railroad several hundred feet further west. This strip extends about four miles from the North boundary of the City to the South. Approximately 40% to 50% of it remains vacant with the remainder developed with a variety of small business uses.

North of the property in the condemnation suit, on the East side of Skokie Highway, is the Country Club Estates subdivision, a residential development of substantial proportions. Immediately to the South and East the property is vacant and unsubdivided.

Parcel B consists of 3.41 acres and has a North line of 759.6 feet. The South line of Parcel B, which is also the North line of Parcel C, is 662.4 feet while the South line of C is 565.1 feet. Parcel C is 2.97 acres. Approximately 285 feet from the East line of the properties the elevation drops abruptly so that the rear portions are some 17 feet lower than the area fronting on Skokie Highway.

As is usual in condemnation cases, the testimony of the opinion witnesses who testified as to the market value of the property differed radically. Two witnesses testified for the Park District that the highest and best use of the property was residential and that, in their opinion, Parcel B had a fair cash market value as of August 17, 1962, of $7,000 and Parcel C had a value of $6,500.

Experts testifying for the property owners disagreed with both the fair market value expressed by the Park District's witnesses and the highest and best use of the land. The property, they insisted, was not realistically zoned in that its highest and best use was "Office and Research," or a planned business center or some other commercial use. They pointed out that the proximity to Skokie Highway, the commercial development directly across from the subject property,

the distance from schools, churches and a shopping area all contributed to its undesirability for residential use. They were of the opinion that the fair cash market value of Parcel B for its highest and best use would be between $41,000 and $42,500 and for Parcel C, $35,000 to $37,500. Even zoned residential, they stated that the property was worth between $27,500 and $29,900 and between $23,250 and $25,200 for "B" and "C," respectively.

At the conclusion of the trial, the jury, who had visited and inspected the premises, returned verdicts awarding the owners of Parcel B the amount of $10,000 and $9,300 to the owners of Parcel C.

A post-trial motion by the owners to set aside the verdict of the jury and grant a new trial was overruled and judgment was entered on the verdict. This appeal results.

■ While the owners urge numerous areas of alleged error as basis for a reversal and a new trial, their principal objection seems to be that the Court denied them the right to present their "theory" of value to the jury. As we have seen, the property was zoned residential and the witnesses for the Park District based their evaluation of the property on that basis. The owners insisted throughout the trial that the existing zoning was unsuitable and that the jury should consider the likelihood of rezoning and the resultant increase in valuation in making their determination of the fair cash market value. It is well settled that under the law of eminent domain the owner of property condemned for public use is entitled to just compensation measured by the fair cash market value of the property for its highest and best use upon the date that the condemnation petition is filed. City of Chicago v. Giedraitis, 14 Ill2d 45, 49, 150 NE2d 577; City of Chicago v. Equitable Life Assur. Soc., 8 Ill2d 341, 345, 134 NE2d 296.

█ It is equally well settled that where the jury has viewed the property and returned a verdict which is within the range of the evidence, that their verdict will not be upset unless it can be clearly established that it resulted from passion, prejudice, or palpable mistake. County of Cook v. Colonial Oil Corp., 15 Ill2d 67, 69, 153 NE2d 844; City of Chicago v. Harrison-Halsted Building Corp., 11 Ill2d 431, 437, 143 NE2d 40.

█ It is not so well settled, at least in Illinois, whether in considering the highest and best use of the land for determining the just compensation due the owner, 'a use can be contemplated which would not be permitted under existing zoning restrictions. Appellants cite an impressive array of cases from other jurisdictions to the effect that the reasonable probability of rezoning in the near future can be taken into consideration in a determination of just compensation. State of Washington v. Motor Freights Terminals, Inc., 57 Wash2d 442, 357 P2d 861. We think this is a reasonable rule, and, in essence, it is the basis for appellants' "theory," i. e., the jury should have considered the reasonable probability of the rezoning of the property to a less restrictive use in the near future. However, we cannot agree with their contention that they were denied the right to present this view to the jury.

Appellants' opinion witnesses testified that the existing residential zoning had a depressing effect on the valuation of the property, stated that its highest and best use would be some classification of business, and gave the opinion, over objection, that there was a reasonable probability of obtaining rezoning. Evidence was introduced of a sale of a parcel south of the subject property in 1961 for $15,000 an acre after it was conditionally rezoned from residential to "Office and Research." In their opening and closing state-

ments, and throughout the entire trial, counsel for the owners argued this theory in the presence of the jury.

 It is true that the trial court did not permit an attorney to testify as a "zoning expert" that, in his opinion, there was a strong possibility of obtaining a rezoning of the subject property. The attorney had been engaged in the practice of law approximately eight years and handled "three to five major matters" a year, many of them in the City of Highland Park. The difficulty of anticipating what any legislative body is going to do is obvious, and the practice of permitting prognostication on legislative policy, we determine, should not be encouraged. See Trustees of Schools v. Kirane, 5 Ill2d 64, 71, 124 NE2d 886. Real estate appraisers had already testified as to the probability of rezoning. The admission of expert testimony and the qualifications of expert witnesses is generally left to the discretion of the trial judge. Evanston Best & Co., Inc. v. Goodman, 369 Ill 207, 16 NE2d 131. We do not feel that this discretion was abused in this instance.

 In this regard, appellants urge that the exclusion of certain instructions tendered by them, and the inclusion of certain others tendered by the Park District, denied the jury the opportunity to consider this same theory. In examining their excluded instructions, we cannot see that they were improper. However, appellants also tendered an instruction on the question of zoning, as follows:

> "In arriving at the fair cash market value of the land sought to be taken by the petitioner in this proceeding, you may consider the use for which this property is zoned and the reasonable probability that the property might be rezoned for another use, provided you believe from the evidence and your view of the premises that the possibility of rezoning the property for such other

469

use affected or influenced the fair cash market value of the land on the date of the filing of the Petition to Condemn."

This instruction was given, and includes essentially the same material in the excluded ones tendered by the appellants. While certain given instructions are not entirely free from criticism, we feel that as a whole they correctly instructed the jury.

██ Appellants also urge that the admission into evidence of a sale of nearby land as a comparable sale was, under the facts, reversible error. The record shows that this property was about 600 feet south of Parcel C and had approximately 1,500 feet frontage on the East side of Skokie Highway. It was purchased by the witness in 1956, with further options in the original contract being exercised in 1958 and 1959. The property was vacant, unsubdivided and zoned residential. There is no general rule stating the degree of similarity that should exist between property previously sold and property condemned for purposes of comparison. The matter has largely been left for the discretion of the trial judge. City of Chicago v. Vaccarro, 408 Ill 587, 600, 601, 97 NE2d 766. If a reasonable basis exists for the purpose of comparing the land sold with property being condemned, such dissimilarities that might exist will affect the weight, not the competency, of the evidence and can be considered by the jury. Forest Preserve Dist. v. Folta, 377 Ill 158, 162, 36 NE2d 264; City of Chicago v. Vaccarro, ibid. We agree with the trial court in the instant case that enough points of similarity existed to permit the jury to compare the sale in determining value.

██ Appellants also object that the trial court refused the admission into evidence of certain exhibits offered by them. The exhibits involved were certified copies of deeds, conveying nearby properties, a plat prepared in 1947 by one of the owners for a proposed

470

residence on Parcel B, and an escrow file of Chicago Title and Trust relative to the sale of the property previously discussed in conjunction with rezoning. Evidence of all these transactions was admitted, over objection, and the inclusion of the exhibits would have been merely cumulative. We do not feel the trial court abused its discretion in excluding these exhibits.

Finally, it is urged that the conduct of counsel for the Park District was so reprehensible that, despite admonitions from the court, the jury was inevitably prejudiced. The record does indicate some conduct which can be criticized. However, the trial court promptly and effectively sustained all objections and we do not feel that the jury was prejudiced or that the verdict rendered by it was a result of passion inflamed by counsel. The general rule is that a new trial will not be granted for the misconduct of counsel if it appears that there would be no different result at the second trial. County of Cook v. Colonial Oil Corp., 15 Ill2d, 67, 75, 153 NE2d 844. Forest Preserve Dist. v. Kercher, 394 Ill 11, 25, 66 NE2d 873.

The record reviewed as a whole does not indicate that the property owners were denied a fair trial, or that the verdict of the jury was the result of passion or prejudice.

The jury had viewed the property and their verdict is within the range of the evidence. It appears that they had sufficient opportunity to consider appellants' contentions in regard to the proper method of determining the value of the property and rejected them.

We feel that substantial justice has been done and that no reversible error exists, and, therefore, affirm the judgment of the trial court.

Judgment affirmed.

DAVIS and MORAN, JJ., concur.