**BOARD OF EDUCATION OF the CLAY-MONT SPECIAL SCHOOL DISTRICT, Plaintiff,**

**v.**

**14.098 ACRES OF LAND, MORE OF LESS, Situate IN BRANDYWINE HUNDRED NEW CASTLE COUNTY, State of Delaware, Marion L. Rentz and Harry E. Rentz, Jr., her husband, Ernest Lodge Vail and Franklin G. Banks, Guardian of Ernest Lodge Vail, and Unknown Owners, Defendants.**

Superior Court of Delaware.

New Castle.

March 13, 1969.

Robert V. Huber, Wilmington, for plaintiff.

Donald W. Booker and Harvey Porter, Wilmington, for defendants.

## OPINION

CHRISTIE, Judge.

The above action for condemnation of 14.098 acres of essentially undeveloped land for school purposes was tried before a commission on June 11, 1968. The commission awarded compensation in the amount of $142,389.80 or an average of about $10,100 per acre. The award found support in testimony from plaintiff's expert appraisers who regarded the land as best suited for a development of single family dwelling units. Defendants' experts appraised the land in view of their opinion that it was suitable for apartment use at about $18,000 per acre. Defendants seek a new trial contending that the award fails to conform to the evidence and because of alleged errors in the Court's rulings.

## I

Defendants contend that the award fails to conform to the evidence in that it fails to recognize the highest and best use for which the land was reasonably suited. I have reviewed the record. I find that there was a difference of opinion as to the highest and best use for which that land was reasonably suited, as to whether or not it was probable that the land could be rezoned for apartment use, and as to the fair market value of the land at the date in question in view of its present and possible future zoning status.

Defendants' brief points to many factors which might have persuaded the commission to make a larger award but I am of the opinion that the award made is supported by substantial evidence in the record and that such award is not contrary to the weight of the evidence.

## II

Defendants contend that the Court erred in permitting evidence to be introduced as to a possible future taking of a part of the land in question by a different governmental authority for a highway ramp to enlarge an existing exit of Interstate Highway Route I–95. The evidence was especially significant because, if such additional ramp is built, access to the remaining land would be so limited that it might be difficult to obtain approval of rezoning for apartments. Defendants say, among other things, that if the commission is permitted to take a discount in the value of the land on account of the mere possibility of a future partial taking for a highway ramp the landowner is unfairly deprived of compensation for the land and the condemning school authority will get the land at an unjust bargain price.

After defendants' objection to the testimony about the ramp was overruled, defendants showed that federal approval of the ramp proposed by the State Highway Department had been denied. Such approval was pictured as necessary before condemnation proceedings for the ramp could take place. From this defendants argued that the possibility of the ramp was

not only prejudicial but also extremely speculative.

I am of the opinion that under the special circumstances of this case the possibility of further condemnation of a part of the land by a different condemning authority for a highway ramp was one of the many uncertainties which might properly be taken into consideration by the commission in arriving at a fair evaluation of the land. The cross examination by defense counsel put the evidence into perspective by showing such possible condemnation to be in doubt but it did not destroy the admissibility of the evidence, and one of defendants' expert appraisers testified that he took into consideration the possible further taking in arriving at his appraisal of about $18,000 per acre.

Defendants' evaluation of the land depended on the proposition that the highest and best use for which the land is reasonably suited is for relatively high density apartment structures. The land as now classified for zoning purposes is not available for apartment use. The need for a change in zoning involves some uncertainty as to whether such change will be permitted at all. There was evidence from which it could be inferred that a neighboring civic association would actively oppose a change in zoning. It is well known that petitions for such change may be time consuming and expensive even when they are successful. All of these matters affect the present value of the land.

Rezoning in New Castle County involves a consideration of such matters as water supply, surface drainage, sanitary sewers, transportation facilities and access to the tract in question. Experts who testify in zoning applications and in condemnation proceedings routinely consider most of these subjects in their studies and in their testimony.

■ As to the tract in question, present access to the tract and possible future limi-

tations on such access would be proper matters of inquiry in connection with an application for a change of zoning status. The condemnation commissioners were asked to consider the possibility of rezoning. It was not error to let them consider factors which might bear upon whether or not the rezoning would be permitted and the problems that might affect zoning.

Defendants cite Frontage Inc., v. County of Allegheny, 400 Pa. 249, 162 A.2d 1, (1960), in support of their contention that it was error to admit evidence as to a possible future condemnation of a part of a tract in a proceeding such as this. The cited condemnation case is distinguishable on its facts. There the appellate court stated that testimony admitted in evidence by the trial Court as to a collateral suit about access had "but one clear purpose— to indicate—that appellant corporation— had admitted that it had already lost access —". The situation here is very different. The main thrust of defendants' own evaluation of the tract is dependent on an uncertain possibility of change in zoning status of the land. Plaintiff had a right to show other possible changes in status especially since the mere possibility of such change might have a direct bearing on any zoning application.

### III

■ Defendants contend that the Court erred in allowing plaintiff's counsel to cross examine defendants' expert on the valuation testimony he had given as to defendants' adjacent or near-by land which was taken in a prior condemnation trial. Defendants point out that the earlier trial dealt with different land taken at a different date under somewhat different rules as to proper factors to consider in the evaluation.

Defendants cite no cases to support their objection to this line of cross examination. I am of the opinion that the factors men-

tioned go to the weight and value of the testimony and not to its admissibility.

## IV

Defendants contend that the Court erred in admitting testimony tending to indicate that the change in the political structure of the county government would effect the reasonable probability of a rezoning of the subject tract citing Park District of Highland Park v. Beaker, 60 Ill.App.2d 463, 208 N.E.2d 621 (1965).

In the cited case an appraiser had been allowed to testify as to the probability of rezoning but the trial Judge did not permit an attorney to testify as an expert on the subject. The appellate court stated that "prognostication on legislative policy— should not be encouraged". It went on to state that admission of expert testimony is generally left to the discretion of the trial Judge and no abuse of discretion was found to exist in excluding the attorney's testimony.

In the case at bar there was no attempt to have an attorney testify as an expert on zoning, and experts on both sides were permitted without objection to testify about the possibility of rezoning. It is not error in Delaware to allow questioning of appraiser experts on various factors which might have some bearing on the rezoning. 0.040 Acres of Land, etc. v. State, Del., 198 A.2d 7, (1964). The legislative changes made in the county government and the resulting changes in the composition and make-up of the zoning authority are among the many factors the commissioners were permitted to consider. I find no error in having admitted such testimony.

The motion for a new trial is denied.

It is so ordered.