(No. 47127.—

THE DEPARTMENT OF TRANSPORTATION, Appellee, v. WESTERN NATIONAL BANK OF CICERO *et al.,* Appellants.

*Opinion filed March 29, 1976.—Rehearing denied May 27, 1976.*

RYAN, KLUCZYNSKI, and GOLDENHERSH, JJ., concurring in part and dissenting in part.

Morrison & Nemanich, of Waukegan (Donald T. Morrison, of counsel), for appellants.

William J. Scott, Attorney General, of Springfield (Frank M. Daly, Special Assistant Attorney General, of Waukegan, of counsel), for appellee.

PER CURIAM: The Department of Transportation of the State of Illinois (Department) filed a petition in the circuit court of Lake County for condemnation of a parcel of real estate owned by the defendants. This parcel is part

of a larger tract which is improved as a mobile home park. The property is located at the northwest corner of the intersection of State Route 43 (a generally north and south highway) and U.S. Route 120 (an east and west highway). The petition alleges that improvements are to be made to State Route 43; that U.S. Route 120 has been designated a freeway and that direct access to the freeway will not be permitted from abutting property.

The defendants filed a cross-petition alleging that the value of the remainder of the property will be substantially reduced by the construction of the proposed highway improvement and prayed that the jury award compensation for damages to the remainder.

The jury returned a verdict fixing the compensation for the property taken at $80,000 and the compensation for damages to the remainder at $127,000. The appellate court reversed and remanded for a new trial (22 Ill. App. 3d 47), holding that the submission to the jury of the question of damages to the remainder, based on loss of access, was not proper. We granted leave to appeal.

Previously, in 1958, the State had acquired a portion of defendants' property by deed of dedication after negotiations with Francis Murphy, one of the defendants. The land was acquired so that the Department could improve Route 120 and make it a freeway. Prior to this conveyance, the defendants owned and operated a tavern, restaurant, and trailer park, and the property had direct access to both Route 120 and Route 43. The 1958 deed of dedication stated that:

> "the Grantors further, as a part of this dedication, on behalf of himself, his heirs, executors, administrators and assigns, does hereby release, quit-claim and extinguish any and all rights or easements of access and crossing, under which the tract of land herein conveyed and dedicated might otherwise be servient to abutting lands of the grantor."

According to the testimony of Francis Murphy, one of the defendants, he was advised at the time of the 1958

conveyance by Department negotiators that there would be a frontage road constructed on the land taken and that there would be access from the remainder of defendants' property to the frontage road and from the frontage road to Route 120. Following the acceptance of the dedication, the Department took possession of the property, constructed the frontage road, and constructed and maintained one access point from the frontage road to Route 120 about three blocks west of the intersection. There was another access point from the frontage road to Route 120 across the land that had been dedicated by the defendants which the State contends is an illegal access point.

Finding it again necessary to widen and improve Route 120, the State in 1972 filed this condemnation petition to acquire additional land from the defendants. The taking will eliminate the frontage road and both of the access points to Route 120, leaving defendants with ingress and egress only by a circuitous route.

The State contends that, by the 1958 deed of dedication, defendants released all right of access to and across the dedicated property and that, since no right of access remains to be extinguished, there is no compensable injury to defendants' remaining property. We agree.

A deed speaks for itself and its construction is dependent upon the language used. (*Patton v. Vining* (1958), 14 Ill.2d 11, 13.) Where there is no ambiguity in the terms used, the instrument itself is the only criterion of the intention of the parties and there is no need for us to construe it. (*Ambarann Corp. v. Old Ben Coal Corp.* (1946), 395 Ill. 154, 164; *Fowler v. Black* (1891), 136 Ill. 363, 373; see generally 18 Ill. L. & Pr. *Evidence,* sec. 256 (1956).) It is clear to us that in the 1958 deed the grantors released "any and all rights or easements of access and crossing" which they possessed. Consequently, they have no rights remaining to be extinguished and no rights for which the State must compensate them. Defendants had the benefit of legal counsel when this deed was executed,

and there is no allegation of mistake or fraud. The defendants are bound by the clear meaning of the words of their 1958 deed.

Murphy's testimony concerning the alleged assurances of the State negotiators that a frontage road and access to the highway would be constructed does not affect our decision. Preliminary negotiations and agreements made prior to a conveyance of property merge into the conveyance itself. (*Stromsen v. Stromsen* (1947), 397 Ill. 260, 263.) Parol evidence is not admissible to contradict the terms of the conveyance. (*Walter v. Sohio Petroleum Co.* (1948), 402 Ill. 33, 44; *Michalowski v. Richter Spring Corp.* (1969), 112 Ill. App. 2d 451, 455.) Further, the fact that the State did later construct the frontage road and access points does not necessarily indicate that they did so pursuant to a prior agreement.

Defendant has not called into question the sufficiency of the $125,000 paid as compensation for the 1958 taking. We note, however, that while this is not an exorbitant sum, it does seem adequate to compensate defendants for all the property and rights—including the right of access— relinquished.

We find the terms of the 1958 deed to be clear and unambiguous, and in the absence of any mistake or fraud, we will not release defendants from the effect of their agreement. We find that they now have no rights of access left to be extinguished by the instant proceedings.

The second question presented is whether in an eminent domain case it is proper to predicate value on a present capacity for future commercial use when there is no specific testimony regarding the reasonable probability of rezoning.

The property in question is located directly across Route 120 from a large regional shopping center. Further, the condemned property is easily accessible and is located at the intersection of two major highways, and its size makes it conducive to further development. Appraisal

witnesses for the defense testified that while the present highest and best use of the property is as a mobile home park there is a present capacity for future use as a commercial site. They based their opinions of value of the land on the growth of the area and the orientation of the site to take advantage of potential new growth in the next 2 to 5 years because of the regional shopping center nearby.

The reasonable probability of rezoning is a proper factor to consider in establishing value in a condemnation case. (*Department of Public Works and Buildings v. Rogers* (1968), 39 Ill.2d 109.) It is proper to base value upon the highest and best use permitted, not only under existing but also under other zoning classifications where there is reasonable probability of the granting of such zoning in the near future. The burden of proof of the reasonable probability of rezoning is on the landowner. It is not proper to present a witness as an expert solely to testify to the probability of a particular rezoning. (See *Department of Public Works and Buildings v. Rogers* (1968), 39 Ill.2d 109; *Lombard Park District v. Chicago Title and Trust Co.* (1968), 103 Ill. App. 2d 1, 8; *Park District of Highland Park v. Becker* (1965), 60 Ill. App. 2d 463.) If there is sufficient evidence for a court to make a determination that the reasonable probability exists, then the witnesses may testify as to value based on such probability.

We find that the trial judge's determination was correct and that testimony of the defense witnesses included sufficient factors on which the court could base its findings. Those factors include the property's location at the intersection of two major arterial highways, its proximity to a large regional shopping center, its size, recent growth in the area and the lack of other adjacent residential use.

The final issue is whether a condemnor's written appraisal reports must be furnished to the landowner pursuant to discovery proceedings in a condemnation suit.

The trial court determined that such reports are discoverable. The appellate court did not pass upon this issue. However, it was raised in the State's post-trial motion, and both parties have argued it in this court.

The State argues that the appraisal reports should not be discoverable because they represent work product used by the Department in attempting to reach an agreement with the landowner and in presenting that data at trial if an agreement cannot be reached. Inability to agree must be alleged in the petition to condemn, and normally the State obtains written appraisal reports as an aid in meeting this requirement.

The Department points out in its brief that the appraisal reports include: the appraiser's valuation procedure, such as cost approach to value, market approach to value, income approach to value; a narrative analysis of the property and surrounding area, information sources, comparable sales data, and the appraiser's explanation of adjustments; the estimated highest and best use with the appraiser's assumption coupled with a synopsis pertaining to the degree of similarity of the comparable properties to the subject property; an explanation of why such an approach to value was used or was not used; and an analysis relating to the damage estimate for the remainder of the land, if any. The discovery of so comprehensive a report could be significant in persuading the property owner to accept the Department's offer and not proceed to trial, and could also afford the property owner an opportunity to find errors in the computations or in the facts found in the report.

The Department relies on our decision in *City of Chicago v. Harrison-Halsted Building Corp.* (1957), 11 Ill.2d 431. In that case this court stated that appraisal reports were made in preparation for trial and were privileged. However, in *Monier v. Chamberlain* (1966), 35 Ill.2d 351, this court significantly broadened the scope of

discovery in Illinois. Also, since *Harrison-Halsted* the rule of discovery relating to "work product" has been significantly broadened. Supreme Court Rule 201(b) now covers the scope of discovery as it relates to work product:

"(b) Scope of Discovery

(1) *Full Disclosure Required.* Except as provided in these rules, a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action ***.

(2) *Privilege and Work Product.* All matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure. Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney."

We cannot accept the Department's contention that these reports are privileged or are an attorney's work product. Subsequent to *Monier,* the appellate court has held that reports of appraisers are discoverable as statements by third parties who have knowledge of the facts involved in the controversy. *Department of Public Works and Buildings v. Oberlaender* (1968), 92 Ill. App. 2d 174, aff'd (1969), 42 Ill.2d 410; accord, *City of Bloomington v. Quinn* (1969), 114 Ill. App. 2d 145. See also 5 Nichols, The Law of Eminent Domain (rev. 3d ed), sec. 23.6.

There is no reason why the broad scope of discovery as discussed in *Monier* and as provided in Rule 201(b) should not be available to both parties in an eminent domain proceeding.

Accordingly, the judgment of the appellate court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

*Affirmed in part and reversed in part*
*and remanded, with directions.*

MR. JUSTICE RYAN, dissenting in part and concurring in part:

I do not agree with that part of the majority opinion which holds that the defendants are not entitled to recover compensation for damages to property not taken. I do not believe that the defendants are barred from such recovery by the deed of dedication executed by them in 1958.

For an understanding of the reasons for this dissent it is necessary to amplify the statement of facts contained in the majority opinion.

According to Murphy's uncontroverted testimony, he was advised prior to the 1958 conveyance by Department negotiators that there would be a frontage road constructed on the land taken and that there would be access from the remainder of defendants' property to the frontage road and from the frontage road to Route 120. Following the acceptance of the dedication, the Department took possession of the property, constructed the frontage road, and constructed and maintained one access point from the frontage road to Route 120 about three blocks west of the intersection. There is another access point from the frontage road to Route 120 across the land that had been dedicated by the defendants. Although the Department contends that this access point near the intersection is illegal and that it was not constructed by the State, there is no evidence to support this contention. The only evidence concerning this point of access to Route 120 was given by Murphy, who testified that the State constructed it when the frontage road was built and that the State erected a stop sign at its entrance to Route 120. In fact there were two stop signs controlling traffic in this area. One was located at the point where eastbound traffic on the frontage road entered the access point, and the other was located at the point where southbound traffic on the access point entered Route 120. Murphy also testified that the State had continuously maintained the access point, had constructed curbs in the area and had provided a break

in the lane divider on Route 120 so that eastbound traffic on that highway could enter the access point from the south. All access to Route 43 was eliminated except over the frontage road by going north several blocks to Washington Street and then east to an interchange at the intersection of Washington Street and Route 43.

As noted above, prior to the 1958 taking, defendants' property had direct access to Route 120 on the south and to Route 43 on the east. There were several east-west and north-south streets which ran through the defendants' property and intersected these highways. A tavern, restaurant, laundry room, outside toilets, about 15 mobile homes and six or seven cabins were located on the property conveyed to the State. The property was in a prime location at a busy intersection, and consequently the rights of access to the highways were valuable. Without the frontage road and access points which Murphy testified the State had agreed to construct and which the State did in fact construct, the remainder of the defendants' property would have been virtually landlocked and its value drastically reduced. The deed of dedication does not disclose what part, if any, of the payment of $125,000 for this conveyance was allocated for the relinquishment of the access rights. In view of the apparent substantial value of the property taken, a significant part of the consideration must have been compensation for the property taken.

Following the 1958 conveyance the State applied the property it had acquired to the accomplishment of a public purpose, the construction of a frontage road and access points to Highway 120. By virtue of this construction by the State the lands abutting the frontage road, the defendants' land included, acquired certain benefits from and its value was affected by the public purpose project. In 3 Nichols, The Law of Eminent Domain (rev. 3d ed.) sec. 8.6203[3], at 77, it is stated:

> "When a street is laid out through a large tract of land, the value of the remaining land may be enhanced by its

newly acquired frontage upon a public street and by the increased accessibility."

Also, in 1 L. Orgel, Valuation Under The Law of Eminent Domain (2d ed. 1953), sec. 104, at 443, it is stated:

"While the decisions of the courts are not in accord on the question whether an enhancement in value caused by the very improvement for which the land is taken should be considered, they would probably all agree that an increase in value of land resulting from a prior and separate improvement should be allowed. Thus, if there is an anticipated rise in value because of a projected street on which the property will front, and if this land is subsequently taken for park purposes, its enhanced value by reason of the anticipated benefits to result from the projected street improvement will be allowed."

See also *McChristy v. Hall County* (Tex. Civ. App. 1940), 140 S.W.2d 576; *Louisiana Highway Com. v. Merchant* (La. App. 1937), 174 So. 696.

The relinquishment of access rights by the defendants in 1958 related to the rights their property then possessed. Following the construction of the frontage road and the access points the defendants' property received certain benefits from that construction and acquired certain rights in relation thereto that it did not have in 1958, namely, access rights in relation to the frontage road. There is no indication in this record that the present highway improvement project is a continuation of or related to the 1958 project. The property rights taken now must therefore be compensated for as their values have been enhanced or diminished by the 1958 project. Also the rights for which the defendants must be compensated are those rights that existed in 1972 after the completion of the 1958 project, including the right of access to the frontage road.

The responsibility for an accurate description of the rights of access to be taken rests on the condemnor, not on the property owner or the court. (*Department of Public Works and Buildings v. Finks* (1956), 10 Ill.2d 20, 25.)

Therefore, if the language in the 1958 deed were found to be ambiguous and subject to several constructions, we would be compelled to construe the deed against the State-condemnor. However, I find that the language of the deed is unambiguous and clearly releases only those rights which defendants then had and does not purport to relinquish any rights their property may acquire by virtue of the completion of the project for which the conveyance was made.

The State contends that the conversations between Murphy and the State's negotiators should not have been admitted since the negotiators' statements could not bind the State. Even if it is assumed, *arguendo*, that this is correct and that defendants could not have compelled the construction of the frontage road, the fact remains that the frontage road was constructed as a part of the 1958 project. In the subsequent development of their property, the defendants relied for 14 years on the existence and maintenance of this frontage road. The State's liability is not predicated on the words of its negotiators, but on the overt acts of the Department in constructing and maintaining this public way and its access points. This conclusion does not involve the principle of estoppel. This is only a recognition that following the construction of a public purpose project, affected property assumes its character, value and rights in relation to or as affected by that project.

This court has recently stated that a property owner suffers compensable damages if his direct access to an abutting street is completely eliminated, and cases "have consistently indicated that a property owner has a valuable property right of access to streets adjoining his property which cannot be taken away or materially impaired without just compensation." (*Department of Public Works and Buildings v. Wilson and Co.*, 62 Ill.2d. 131, 139.) Therefore, the elimination of the frontage road adjoining

defendants' property and its access to Route 120 substantially affects the value of the remainder of defendants' property and requires compensation by the State.

After access to Route 120 over the frontage road has been extinguished, access to that highway from the defendants' property will be over a proposed extension of an existing east-west street which is about 300 feet north of Route 120. Travel from the defendants' property will be west over the proposed extension several blocks to Kenilworth Avenue, thence south to an interchange permitting access to Route 120. Defendants' witnesses testified that this circuitous route will destroy the commercial value of the defendants' property. We held in *Wilson and Co.* that the substitution of a frontage road for previously existing direct access does not preclude an award for compensation but instead is a fact to be considered in determining the extent of damage. This rationale likewise applies to the facts in this case.

There is no dispute here as to the State's power to extinguish access rights (Ill. Rev. Stat. 1971, ch. 121, par. 8—102), but I cannot ignore the mandate that "[w]hen property is damaged by the closing of any public way, the damage shall be ascertained and paid as provided by law." Ill. Rev. Stat. 1971, ch. 121, par. 8—106.

In summary, I believe that no rights of access to the frontage road were released by the 1958 deed and that the closing of this public way gives rise to a statutory duty of the State to compensate for damages to the adjoining property of defendants.

I concur with the majority that in an eminent domain case it is proper to predicate value on a present capacity for future commercial use, and I also concur that in an eminent domain proceeding the broad scope of discovery set forth in Rule 201(b) should be available to both parties.

KLUCZYNSKI and GOLDENHERSH, JJ., join in this partial dissent and partial concurrence.