(No. 31546.—)

THE CITY OF CHICAGO, Appellee, vs. ALICE M. SEXTON et al.—(THE CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Appellant.)

*Opinion filed January 18, 1951—Rehearing denied March 19, 1951.*

NYE F. MOREHOUSE, LOWELL HASTINGS, and DRENNAN J. SLATER, all of Chicago, for appellant.

JOHN J. MORTIMER, Acting Corporation Counsel, of Chicago, (JOHN C. MELANIPHY, FRANCIS S. LORENZ, and WALTER V. LESAK, of counsel,) for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal by the Chicago and North Western Railway Company from a judgment of the circuit court of Cook County based on a jury verdict awarding only nominal damages of $1 to it for the taking of an easement in certain of its property located in the city of Chicago immediately west of North State Street and north of the Chicago River. The city of Chicago filed a petition in the circuit court of Cook County to acquire by eminent domain certain premises for the widening of the North State Street

viaduct and its north approach between the North State Street bridge over the Chicago River and Kinzie Street. Its petition alleged the adoption of an ordinance by which North State Street would be widened to a width of 115 feet and that certain real estate and easements necessary to accomplish this widening were to be acquired, describing said tracts to be taken as parcels 1, 2, 3, and fourteen subparcels of parcel 3. Parcel 1 is a tract of land approximately 45 feet deep with about a 160-foot frontage on North State Street at the southwest corner of Kinzie Street and North State Street. The court ordered that compensation for this parcel be set by a separate jury prior to the trial of this cause. It is therefore not involved in this appeal. Parcel 2 was an L shaped piece of ground with a frontage of approximately 33 feet on North State Street and an approximate depth of 45 feet back from State Street, the balance thereof being a long strip of land approximately 5 feet in width running all the way to the south line of Kinzie Street in back of tract 1. Tract 3 was an easement over space occupied by appellant's railroad tracks immediately south of tract 2 on the west side of North State Street and has a depth of about 45 feet and a frontage on North State Street of approximately 143 feet. It has a total area of about 8930 square feet. The subparcels consist of space for viaduct supports of various types therein.

The railway company filed its answer to the petition for condemnation and alleged that the taking of the easements described in parcel 3 would cause damage to the railway company fee interest in the premises in the amount of $108,363 in that it would reduce the premises from a value of $15 per square foot to a value of $3 per square foot. It was also alleged that the widening of the approach would require the railway to depress its tracks under and to the west of the viaduct at an expense of $4200.

A trial was had before a jury and the jury found that just compensation to be paid for parcel 2 consisting of about 2688 square feet was $26,880, that just compensation to the owners of 575 square feet covered by certain subparcels was $5750 and that just compensation for parcel 3 and for approximately 300 square feet covered by nine subparcels was a nominal sum of $1. The jury also returned a verdict in behalf of the railway for damages on account of the required changes in the elevation of certain of its tracks in the sum of $4200. Judgments on the verdicts were entered by the court. No appeal has been taken from the award of compensation for parcel 2 or for nine of the subparcels. This appeal concerns only the award of nominal damages for parcel 3 and five of the subparcels.

The Chicago and North Western Railway Company contends, among other things, that the court erred in the following particulars:

1. The court refused to permit evidence to the effect that parcel 3 and the five subparcels were susceptible of other than railway uses without abandonment or unreasonable impairment of the use of the remainder thereof for railroad purposes.

2. The court erred in refusing to permit appellant to show the fair cash market value of parcel 3 and the five subparcels.

3. The court improperly instructed the jury with reference to the damages to be given for parcel 3 and the five subparcels.

The evidence showed that since 1930 the property owned between State and Dearborn streets and north of the Chicago River had been in the same condition in which it existed at the time of this suit and that prior to 1930 the railroad maintained several freight houses on the property situated both east and west of State Street but that at that

time the freight houses were torn down and the premises have continued as they existed at the time of the trial. Expert testimony was presented as to the value of all the tracts. Mr. Morrison, a witness for the city, testified that the damages to the railroad by reason of taking the easement in parcel 3 would be $1. Mr. Roe, another expert called by the city, likewise testified that the damages on account of taking parcel 3 amounted to $1. The appellant railway company, through its assistant land and tax commissioner, showed that the area of its whole tract between State and Dearborn streets was 139,321 square feet and that it leased 32,000 square feet thereof for automobile parking purposes. Through this witness the appellant also offered to prove that this property could be sold or leased in such a way that its disposal to outside interests would not cause impairment of use of the remainder of the property for railway purposes and offered photographs of the area sought to be condemned and some of the surrounding locality. Objections made by the city thereto were sustained. It also offered to prove that on May 4, 1948, it had sold a total of 47,756 square feet located on the north side of the Chicago River just east of Wabash Avenue, approximately one block east of the premises herein condemned, for the consideration of approximately $600,000. This offer of proof was refused. It also offered to prove that the site of the Merchandise Mart had been previously owned by the appellant and had been sold for $2,500,000, but this was refused.

Expert witnesses were produced by the appellant as to the value of the premises. Mr. Scribner testified that he had appraised parcel 3 at $107,160 which he regarded to be 80 per cent of the value of the fee. The court sustained a motion to strike that portion of his testimony as to the value of parcel 3 which was based on use of air rights over the property. Another witness, Mr. Hunter, testified that the fair cash market value of parcel 3 was

$145,000 and that the air rights contained in parcel 3 constituted 80 per cent of the entire value. Likewise, his testimony was stricken as to the value of parcel 3.

It will be seen from the foregoing recital that this case presents quite squarely for determination the mode of computing adequate compensation for an easement over property used for railroad purposes. It is apparent that the city of Chicago and the trial court have relied considerably upon the decision of this court in the case of *City of Chicago* v. *Lord*, 276 Ill. 571. That case arose out of the widening of the Twelfth Street viaduct between Wabash Avenue and Canal Street to 118 feet by adding a strip of land adjoining it on the south having a width of 68 feet and another strip having a width of 52 feet. These tracts of land were situated at the southwest corner of Twelfth Street and State Street with a frontage of 52 feet on State Street and 100 feet on Twelfth Street, no portion thereof being then used by the present existing viaduct or subject to any easement. On the north part of the tract was a three-story building used for storage purposes. The Santa Fe railroad also had a freight house on part of the tract. The rest of the property was vacant except for three railroad tracks thereon. A judgment for $2 was rendered in favor of the railroad for an easement over the tracks and $6117 for the improvements, being for the warehouse that would have to be cut down and readjusted. The Santa Fe railroad appealed the $2 judgment and contended that it was entitled to the value of the land for a special use of a warehouse several stories high in connection with its freight house. The railroad offered evidence of the value of the tract for the purpose of erecting a warehouse. In that case, at page 588, we stated, "The property of a railroad company used in the conduct and operation of the railroad, whether capable of use for a right of way, only, or for other purposes, is devoted to a public use, and its value to the railroad company is its value for railroad pur-

poses." We further stated that the fact the property is available for use in some other way or for some other purpose is not material, if it was not, in fact, employed in such a way or for such purposes or if such employment were not in immediate contemplation. The court held that the offered evidence was inadmissible.

Since the decision of *City of Chicago* v. *Lord,* 276 Ill. 571, the legislature has adopted a law the title to which is "An Act to Increase the Powers of Railroad, Union Depot and Terminal Companies," approved July 7, 1927. (Ill. Rev. Stat. 1949, chap. 114, par. 174a.) This statute provides that whenever a railroad is the owner in fee of real estate susceptible of other than railroad uses without abandonment of such railroad uses, or different levels or parts thereof, which real estate may be devoted to such other uses without unreasonable impairment of the use of the remainder for railroad purposes or part of the real estate above or under the part needed for railroad operations which may be utilized or developed for buildings or other structures to be used in other businesses, the railroad may improve and develop such real estate and may sell, convey and lease to others such part or parts thereof as the railroad may at any time elect, providing that the plan of such development and the sale or lease is in each instance approved by the Illinois Commerce Commission and the commission finds that such use will not unreasonably impair the use of the remainder of the real estate for railroad purposes.

This statute, as its name implies, was intended to increase the powers of railroads with reference to use of property owned in fee by them. It is apparent that this statute was adopted as a result of progressive changes in the utilization of property in metropolitan areas occasioned by different modes of construction of structures and different improvements in the operation of railroads and the resulting changes in their needs and uses for real estate. In view of the adoption of this statute it is the decision of

this court that the compensation to be paid to a railroad for taking an easement over property owned in fee by the railroad must take into consideration the use to which that portion of the property so taken could be put without unreasonably impairing the use of the rest of the property for railroad purposes.

It is apparent from reading the record in this case that the trial court did not give any consideration to the effect of this statute upon the mode of ascertaining compensation to appellant. We believe that it was proper for the railroad to prove that it was the owner in fee of the premises here involved. If, in fact, the railroad owned the fee-simple title to the premises involved, the railroad should be permitted to show the use of this property and the property in the immediate vicinity for other than ordinary railroad purposes. While it is true that the statute contains a proviso that the railroad cannot sell or dispose of its property for such other purposes without the approval of the Illinois Commerce Commission, it would seem proper that the jury should be entitled to consider evidence as to the other uses to which this property could be put and to also consider the possibility of the Commerce Commission authorizing such use. It is apparent from reading the record that the jury was not so permitted in this case.

The argument has been made by the city that this statute has no bearing on this case until the Commerce Commission has authorized the development of the property for other uses. We believe that the jury, in determining the proper compensation to be paid, should have had the opportunity of giving consideration to the use of these premises for other than railroad purposes.

We, therefore, believe that the judgment of the circuit court with reference to parcel 3 and the subparcels involved in this appeal must be reversed and that, upon a new trial of the matter, the railroad be permitted to prove the type of title it owns in the property and the value of the

358

property for other than railroad purposes, if it does, in fact, own a fee-simple title.

For the reasons stated in this opinion, the judgment of the circuit court is reversed and the cause remanded for a new trial in conformity with the views expressed in this opinion.

*Reversed and remanded.*