[Civ. No. 30805.   Second Dist., Div. One.   May 24, 1967.]

THE COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF LOS ANGELES, Plaintiff and Respondent, v. WILLIS HENDERSON, Defendant and Appellant.

338

Floyd H. Norris for Defendant and Appellant.

Anson & Gleaves, Eugene M. Jacobs and John B. Anson for Plaintiff and Respondent.

LILLIE, J.—This is an appeal from a final order of condemnation following a jury trial wherein compensation in the sum of $72,500 was awarded for the taking of the subject parcel located within the project area of the Bunker Hill Redevelopment Project. Plaintiff's authority to acquire the property in suit for the elimination of blight and for redevelopment purposes has heretofore been given judicial sanction (*In re Redevelopment Plan for Bunker Hill*, 61 Cal.2d 21 [37 Cal.Rptr. 74, 389 P.2d 538]), the project area being delineated by a sketch appearing on page 32 of the opinion. It is claimed that the trial court erred in excluding certain evidence and in refusing to give one of defendant's requested instructions; a subsidiary contention concerns the asserted misconduct of plaintiff's counsel and the court's subsequent refusal to grant a mistrial therefor.

The property known as 339 South Bunker Hill Avenue is an inside lot, 60 feet in width and 150.75 feet in depth, lying a little less than 300 feet south of Third Street. As shown on the sketch above referred to, the Los Angeles Civic Center is located immediately to the north of First Street. To the south of Fourth Street (which takes the form of a cut from Figueroa to Olive Streets) lies the downtown Los Angeles business section which, for the purposes of this appeal, is bounded on the west by the Harbor Freeway, on the east by Spring Street (three blocks east of Olive) and on the south by Seventh Street.

At the time of the taking defendant's property was zoned R-5-4, designating residential use with maximum height limit, whereas properties in the downtown business section proper, the sales of which were considered by defendant's experts in the formulation of their valuation, were zoned for commercial purposes (C-5-4). Consideration was given to sales outside the redevelopment area proper because, as agreed by all parties, transactions within the area itself were of little value since

there had been sales to no one but plaintiff Agency since 1957. Defendant's two experts, on the basis of sales in the commercially zoned downtown business section, placed a value of $227,000 ($25 per square foot) and $225,000 ($24.80 per square foot), respectively, on the subject parcel. However, with one exception (a parking lot at Fourth and Hill Streets), neither expert was permitted to give the prices of the transactions on which they relied; this, upon the ground that none involved property ''sufficiently alike in respect to character, situation, usability, and improvements, to make it clear that the [sales price realized therefrom] may fairly be considered as shedding light on the value of the land in question.'' (*County of Los Angeles* v. *Faus*, 48 Cal.2d 672, 678 [312 P.2d 680].) Plaintiff's expert, on the other hand, considered sales of residential properties, all west of the Harbor Freeway, and fixed the value of defendant's property at $72,500 or $8.00 per square foot. This was the valuation fixed by the jury.

As his first point, defendant contends that the court erred in excluding evidence of the various sales that formed the basis of his experts' valuations. It is urged that such sales were near enough in time and sufficiently similar otherwise to meet the standards laid down in the *Faus* case. ■ But the guidelines referred to (and adopted) in that case are those of McCormick on Evidence (1954), section 166; and, as that work further points out, ''Manifestly, the trial judge in applying so vague a standard must be granted a wide discretion.'' Hence, unless as a matter of law there was an abuse of discretion in the trial court's rulings, the point is not sustainable. ■ Defendant properly argues that the factors of time, location, character, suitability, usability and improvements need not be identical as long as they are similar; such was the holding of this court in *Covina Union High School Dist.* v. *Jobe*, 174 Cal.App.2d 340, 350 [345 P.2d 78], which also observed that ''There can be no absolute formula or definition of what constitutes similar or like property . . . the determination [of which] must vary with each particular case.'' (P. 350.) The *Covina* decision further holds that ''size'' is not a determining factor, that item not having been mentioned in *Faus*; however, in 1965 (prior to trial of the instant cause) the rule of the latter case was codified to include ''size'' as a factor (Code Civ. Proc., § 1271.2), and since the Legislature must be assumed to have been aware of

existing judicial decisions at the time of such enactment, the rulings presently challenged must be viewed in the light of the statutory law then applicable.

We have reviewed the several sales asserted to involve comparable properties, and are satisfied that in excluding them from the jury's consideration the trial court as a matter of law did not abuse the wide discretion given to it in such matters. None of the several requisites for comparability heretofore listed seem entitled to any special precedence over the others—all must be considered, where possible, in combination. The vicinity of defendant's parcel to certain of the subject sales, in some instances only three blocks, is understandably emphasized by defendant as supporting his argument for their consideration by the jury. ▮ On the other hand, we cannot overlook the fact, almost *sui generis*, that defendant's property, while practically contiguous to the downtown business section, is in a blighted area, zoned for residences 95 percent of which were constructed before 1919 and converted in many cases into rooming houses, located on a street only 40 feet wide and but three or four blocks long, and sloping sharply to Hope Street, likewise not a thoroughfare, on the west.

Defendant in some instances attempted comparison of his land with improved, going business properties on through streets outside the redevelopment area; in other instances, the factors of usability and size also militated against the attempted comparison of the parcels sold with defendant's property. The first of such sales involved the Dawson Bookstore located at 550 South Figueroa (a through street) directly opposite the Jonathan Club and almost immediately adjacent to at least three office buildings; it was zoned C-5-4 (heavy commercial) and improved with a two-story building with rentals of $18,000 per year. The second sale concerned some five parcels on the north side of Sixth Street from Hope to Grand; it included the northwest corner of Sixth and Grand (both through streets) improved with the twelve-story Savoy Hotel in the immediate area of which are the Biltmore Hotel, the Main Library, and several large office buildings. As to both such sales, we cannot say that objections thereto were improperly sustained on the ground that they differed in zoning, use and usability, as well as in improvements and area. ▮ Sale of the property now known as One Wilshire was the next transaction; the parcel is five times larger than

defendant's parcel and is located at the end of Wilshire Boulevard between Sixth and Seventh. In view of the great disparity in size, plaintiff's objection on that ground alone (although there were other valid grounds) would have been good.

The next three transactions involved properties located on the east side of Olive Street about 170 feet south of Sixth, the southeast corner of Olive and Sixth, and the southeast corner of Fifth and Hill Streets. As with the previous sales, all three parcels are surrounded by office buildings and are centrally situated in the heart of the business section; certain of the dissimilarities infecting the previous sales are also present, including the improvement of the Sixth and Olive corner parcel with a building which rented for $90,000 per year. The last two sales were of parcels on Broadway and Spring between Fourth and Fifth Streets, respectively; all are through streets with going businesses situated thereon; the Spring Street property was improved and both parcels are likewise surrounded by office buildings or stores. The attempted comparison was properly excluded from the jury's consideration.

The problem here, somewhat novel in nature, classically exemplifies the rule stated in the *Covina* decision that no exact formula can be laid down for the determination of what is similar property and it necessarily varies with each particular case. "The trial court is to adjudge what are 'comparables,' not the witnesses" (*Los Angeles etc. School Dist.* v. *Swensen,* 226 Cal.App.2d 574, 583 [38 Cal.Rptr. 214]); accordingly, the reasons given by the experts are persuasive only to the extent that they are based on sound premises.

In that connection, defendant offered to prove that the sales he relied on varied from a low of $46.16 to a high of $156.69 per square foot, although his experts valued the subject property at $25.00 per square foot. Plaintiff properly argues that properties selling anywhere from twice to five times the value placed on the subject parcel can hardly be said to be sufficiently alike with respect to situation and the other items listed in the statute (Code Civ. Proc., § 1271.2) as to make it clear that they are comparable in value "and that the price realized for the property sold may fairly be considered as shedding light on the value of the property being valued." On the other hand, there is much persuasiveness to the reasons given by plaintiff's expert that mere adjacency to

the downtown business section does not make defendant's land comparable in value with property located in such section. Illustrating his point for non-comparability, he stated: "The environment is completely different, the use is different, the zone is different, what people are paying in the open market is entirely different.

"As an example, there is a sale on the corner of Seventh and Hope Street that sold for $42 a foot, and there is another sale down at the corner of Ninth and Hope Street that sold for $14 a foot. Now, that is the difference between an active retail business district and one that is out on the perimeter of it, and it is just two blocks away. Those are some of the reasons why in my opinion the downtown area is not directly comparable to the subject property."

■ We pass to defendant's second contention that the trial court erred in unduly restricting the cross-examination of plaintiff's valuation witness, this despite the fact that such cross-examination consumes more than 90 pages of reporter's transcript. The first of three rulings complained of foreclosed any further inquiry by defendant's counsel relating to the abandonment of Bunker Hill Avenue under the redevelopment plan. It appears that the plan itself had been offered in evidence (Exh. 12) by the plaintiff during its cross-examination of Mr. Martin, one of defendant's two experts, as the best evidence of the probability of a zone change, which change in zoning was a factor considered by him in arriving at his valuation of the subject parcel. But the plan's introduction by plaintiff did not invite, or authorize, the scope of inquiry sought by defendant which was related to the physical changes contemplated thereunder. Such inquiry would have elicited evidence bearing upon the depreciation or enhancement of defendant's property as a result of the redevelopment. The challenged ruling was not improper, since " 'It is the law, as stated by appellant, that in arriving at a determination of the market value of land which is the subject of a condemnation action, it is not proper to consider the increase, if any, in the value of such land by reason of the proposed improvement which is to be made on the land by the condemnor. [Citations].' " (*City of San Diego* v. *Boggeln*, 164 Cal.App.2d 1, 5 [330 P.2d 74].) ■ The next asserted instance of undue restriction of cross-examination occurred when plaintiff's witness was being examined as to his familiarity with the chronological events listed in the Supreme

Court decision (*supra*, 61 Cal.2d 21, 31-33]; the witness was asked if he found therefrom that "there was a freeze put on all of the property" in the area. Objections to the use of the word "freeze" and to any further inquiry concerning the facts stated in the decision as not proper cross-examination were sustained. While great latitude should be accorded a cross-examiner, it seems (in answer to defendant's question) that the witness did not even examine the decision; and as for the proposed plan, discussed by the Supreme Court, he stated that it "was an after condition of the property and would not have been helpful to me in forming my opinion of the value before . . . acquisition." No prejudice resulted to defendant under the circumstances. ■ Finally, defendant complains that he was erroneously denied permission to cross-examine plaintiff's expert on certain reports prepared by Homer Hoyt and Henry Babcock, consultants to plaintiff Agency, relating to the general feasibility of the redevelopment plan although the witness had not considered these reports in fixing his valuation.[1] He did not do so, he stated, because they had no bearing on the "before" condition of the property. Both reports were prepared in contemplation of the redevelopment plan's eventual approval; they were submitted to plaintiff prior to 1957, some eight years before the resolution (in April of 1964) condemning the parcel in suit. If, as urged by plaintiff, the reports were prepared with a view to the feasibility of a project which would enhance the value of the property, any such enhancement would ultimately have had to be disregarded by the jury in determining the amount of compensation for the taking. (*City of San Diego* v. *Boggeln, supra,* 164 Cal.App.2d 1, 5.) The proposed inquiry, therefore, had no relevancy to the ultimate issue of value, and the court did not err in the ruling complained of.

■ Citing *People* ex rel. *Dept. of Public Works* v. *Donovan,* 57 Cal.2d 346 [19 Cal.Rptr. 473, 369 P.2d 1], defendant submitted an instruction that "as a matter of law . . . there

---

[1]Singled out by defendant's counsel was the following statement by Mr. Hoyt: "The high plateau of Bunker Hill, rising a hundred feet above the Los Angeles plane, extends from Hope Street to the east side of Olive Street, from Third Place to First Street. Here it is possible to create the finest central office headquarters in Southern California. The 25-story building would dominate the Los Angeles skyline. The view of the mountains and the ocean would be magnificent. Here would be abundant parking and access to freeways which form the boundaries of the Bunker Hill and Civic Center redevelopment projects and would be superior to any area in Los Angeles."

is a reasonable probability of a zone change from residential to commercial in the near future of the subject property.'' It is held in *Donovan* that ''Where there is a reasonable probability that zoning restrictions will be altered in the near future, the jury should consider not only those uses currently permitted, but also other uses to which the property could be devoted in the event of such a change.'' (P. 352.) Referring to certain ''undisputed testimony'' that there was a reasonable probability of a zone change, defendant argues that it was error to refuse the instruction as worded. An examination of the record discloses, however, that while the testimony of defendant's witnesses might have supported the claim thus made, there was testimony to the contrary. For example, plaintiff's valuation witness stated quite definitely that the limited length and width of Bunker Hill Avenue militated against the increased traffic conditions which accompany increased commercial development, adding that ''the street patterns and the access to the property [are] so curtailed that it would not be desirable for an investor to create that kind of an improvement on the property.'' Mr. Sims, another witness for plaintiff and likewise qualified on such matters, testified substantially to the same effect. Defendant also asserts that by its decision (61 Cal.2d 21, *supra*) the Supreme Court has concluded that the entire area will be rezoned for commercial use and plaintiff is given no discretion to do otherwise; but no portion of that decision is mentioned which will authorize such a sweeping conclusion. Under the circumstances, and with proper regard for the *Donovan* rule, the court by the following instruction (quoted in pertinent part) correctly left to the jury the determination whether there was a reasonable probability of a zone change: ''. . . A witness may also consider the reasonable probability, if any, of a change in zoning restrictions in the near future, and the effect such a probability would have upon the value of the property. This [*sic*], in weighing the opinion of a witness as to the value of the subject property based in part upon the reasonable probability of a change in zoning in the near future, you must determine whether, or not the evidence establishes that there is in fact a reasonable probability of such change of zoning in the near future.'' (Plaintiff's Instruction No. 7.)

▆▆▆ Defendant's final assignments of error concern the trial court's refusal to grant his motion for a mistrial because of the asserted misconduct of plaintiff's counsel which,

following the denial of the motion, was repeated by counsel and deprived him of a fair trial. (*Garden Grove School Dist.* v. *Hendler*, 63 Cal.2d 141 [45 Cal.Rptr. 313, 403 P.2d 721].) By way of background, respective counsel were ordered, prior to trial, to limit the number of sales of comparable properties (less than the number hereinafter mentioned) for use in fixing the parcel's value. Despite such limitation, plaintiff's counsel made the following statement during the course of an objection to the comparability of a sale at Fifth and Hill Streets: "Your Honor, the defendant's appraisers turned in sales, there are 75 sales in Mr. Metcalfe's appraisal and there are 37 sales in Mr. Martin's appraisal. There are plenty of sales if they want to find some that are comparable. . . ." This statement, says defendant, was intended to imply that he was endeavoring to use improper sales and thus, inferentially, practice a fraud upon the court. In light of the background facts, the statement should not have been made; but defendant's counsel apparently thought so little of its prejudicial effect that he continued with his examination until the trial, shortly thereafter, was recessed for the weekend. On Monday the motion for mistrial was made in chambers and denied by the court with the observation that "I don't think it is serious enough for the Court to grant a mistrial" and the further observation that the motion came too late. The jury was thereafter instructed to disregard the statement. We do not believe that the instant assignment calls for a reversal. During presentation of the motion, the *Garden Grove* case (a condemnation proceeding) was cited to the court; the several circumstances there, which included "insulting and derogatory characterizations of defendants," will hardly stand comparison with the isolated incident at bar. ■■ Too, it is the general rule that "a claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished" (*Horn* v. *Atchison, T. & S. F. Ry. Co.*, 61 Cal.2d 602, 610 [39 Cal.Rptr. 721, 394 P.2d 561]); as further pointed out in *Horn*, " 'It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of the act of counsel and remove any effect his conduct or remarks would otherwise have.' [Citation.]" (P. 610.) ■■ The present case is not of the "extreme" variety above referred to. Defendant

also argues that at a subsequent session plaintiff's counsel again referred to "37 sales" (on cross-examination of Mr. Martin) and "75 sales" in Mr. Metcalfe's report. Counsel's references to the number of such transactions were likewise improper, particularly in view of an understanding (following the denial of the motion for mistrial) that they would not be repeated. Unlike the first occurrence, which precipitated the mistrial motion, there was no objection of any kind to the statements thus repeated. The general rule mentioned in *Horn* accordingly governs this and another incident, similar in nature, which defendant claims deprived him of a fair trial.

The order is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied June 19, 1967, and appellant's petition for a hearing by the Supreme Court was denied July 19, 1967.