3 Ill. App.3d 1006 (1971)
279 N.E.2d 754
BOARD OF JUNIOR COLLEGE DISTRICT No. 515 et al., Petitioner-Appellee,
v.
PERCY WAGNER et al., Defendants  (THOMAS M. BORROWDALE et al., Defendants-Appellants.)
Nos. 55124, 55125 cons.
Illinois Appellate Court  First District.
October 1, 1971.
Rehearing denied December 23, 1971.
*1007 *1008 Adamowski, Newey & Riley, of Chicago, (Francis X. Riley, of counsel,) for appellants.
Foran, Wiss & Burke, of Chicago, (Robert E. Wiss, of counsel,) for appellee.
Judgment affirmed.
Mr. JUSTICE SCHWARTZ delivered the opinion of the court:
This is an appeal by defendants-appellants from a judgment on a verdict in a condemnation suit awarding the sum of $195,000 to defendants. On November 10, 1967, petitioner commenced this proceeding to condemn certain property in the City of Chicago Heights. The property consisted of 24 acres of vacant land within an 80-acre tract bounded on the east by Halsted Street, on the south by Joe Orr Road, on the west by Coolidge Avenue and on the north by Vollmer Road. In 1926 a plat of subdivision of the entire 80-acre tract was filed. Included within the tract were dedicated but unimproved streets and alleys. The 24 acres of land owned by defendants are composed of 279 lots scattered throughout the subdivision. On October 29, 1969, the parties stipulated that the lots "shall be tried as one parcel of property" and that single verdict and judgment covering compensation for the whole should be rendered. It was also stipulated that the value should be determined as of November 10, 1967. The jury verdict fixed the value at $195,000 and judgment was entered thereon. Defendants appealed, contending that they are entitled to a new trial because (1) the fair cash market value of the property was not established by competent evidence, (2) incompetent, irrelevant and immaterial evidence on zoning was admitted, (3) the evidence does not establish the amount of land involved, and (4) the defendants were prejudiced by inflammatory and misleading remarks in the petitioner's final argument to the jury. A summary of the evidence follows.
William McCann and John MacNamara testified as valuation experts on behalf of petitioned. Both stated that the highest and best use of the subject property was for predominantly single-family residential development. *1009 McCann, a licensed real estate broker and appraiser, testified that in his opinion the fair cash market value of defendants' lots as of November 10, 1967, was $195,000. In reaching these conclusions as to the highest and best use and market value, McCann considered the location of the property and the trend toward single-family residences in the surrounding area, the abundance of shopping nearby, the availability of schools, transportation, sanitary and storm sewers, topography of the land, soil conditions and the scattered location of the lots. In addition he noted that most of the lots owned by defendants did not have the minimum 35-foot width required by the existing zoning ordinance for single-family residential development and that in any event the market demand in the area would require a 60 to 65 foot width. MacNamara valued the property at $180,000 based on his knowledge of the area, the assemblage of the property as a single parcel and his experience in real estate matters.
Defendants presented evidence of the value of the property based primarily on its potential for development under a change in zoning to a less restrictive use. The value of the property as a site suitable for commercial development was set by several expert witnesses at well over a million dollars. In support of this theory the defendants presented evidence that there was a reasonable probability of a zoning change in the near future. Walter Lovelace, one of the owners of the property, testified that even under the existing residential zoning the property was worth an average of $3000 per lot. We proceed to consideration of defendants' first point, that the fair cash market value was not established by competent evidence.
 1, 2 The competency of a valuation witness in a condemnation proceeding is established by a showing that he is acquainted with the property involved. (Department of Public Works v. Oberlaender, 42 Ill.2d 410, 247 N.E.2d 888; Department of Public Works v. Bohne, 415 Ill. 253, 113 N.E.2d 319.) In the instant case two appraisers testified on behalf of the petitioner as to the value of the 279 lots considered as one parcel. Both witnesses based their opinions on their knowledge of the area, the location and size of the lots, the applicable zoning ordinance and their judgment of developmental trends in the area. McCann placed a value of $195,000 on the property and MacNamara valued it at $180,000. Defendants did not object to the competency of either witness at trial. We conclude that the verdict of the jury setting compensation at $195,000 is supported by competent evidence.
 3-6 Defendants contend that the trial record is replete with incompetent, irrelevant and immaterial evidence. They argue that the proper measure of value is the highest and best use of the land "regardless of *1010 zoning," and that in any event petitioner's valuation witness McCann was not qualified to testify as to the probability of rezoning. It is now well settled that the jury may consider the reasonable probability of a zoning change in determining the highest and best use of property. (Department of Public Works v. Rogers, 39 Ill.2d 109, 233 N.E.2d 409; Lombard Park Dist. v. Chicago Title & T. Co., 103 Ill. App.2d 1, 242 N.E.2d 440; Park District of Highland Park v. Becker, 60 Ill. App.2d 463, 208 N.E.2d 621.) Moreover, valuation witnesses such as McCann are competent to testify as to those "factors" which would inform a jury of the likelihood of a zoning change in the near future. (Lombard Park District v. Chicago Title & T. Co., supra.) In the instant case the defendants' theory in the trial court was that the lots in question could be developed more profitably under a different zoning classification. Of the 279 lots in the tract, five were zoned commercial and the rest were zoned residential at the time the condemnation petition was filed. At the trial the defendants argued that the highest and best use of the property would be either commercial plus multi-unit dwellings or all commercial or all multi-unit dwellings. Whenever a property owner seeks to introduce evidence of value based on a use of property inconsistent with the prevailing zoning classification, he must first establish the reasonable probability of a rezoning within the near future or the court will exclude all evidence and opinions of value based on a use permitted only by a probable rezoning. (Lombard Park Dist. v. Chicago Title & T. Co., supra.) We conclude that zoning was an important factor for the jury to consider in determining the fair cash market value of the 279 lots at their highest and best use and that McCann was competent to testify as to those factors which relate to the probability of rezoning.
 7 Defendants also contend that the evidence does not establish the actual size of the property involved. They argue that while the 279 lots total approximately 24 acres, dedicated "half-streets and alleys," so-called, abutting the lots total 14 additional acres and should also have been considered by the jury in determining value. The evidence established that these streets and alleys did exist within the site and that they would have to be vacated before they could be developed. The testimony was in conflict as to the importance to be attached to these "half-streets and alleys" and with the evidence in that state, the issue was presented to the jury. The existence of conflicting evidence in a case does not constitute grounds for reversal. While defendants characterize this conflicting evidence as relating to the size of the property condemned, no such conflict existed at the trial. The property condemned covered 24 acres, the value of which would have been affected *1011 by the existence of dedicated streets and alleys. Conflicting opinions as to the importance of that evidence with respect to the value of the property was resolved by the verdict of the jury.
Defendants contend that the trial court erred in admitting the testimony of petitioner's rebuttal witness Robert Olson. Olson testified that as a city planner for Chicago Heights he assisted in the preparation of a comprehensive plan which was submitted to the city. That plan recommended that the area in which the property here involved is located be used for residential development. Although Olson originally testified that the plan was accepted by the City in the summer of 1967, defendants established that it was accepted by the City Council on June 24, 1968. The date the defendants' property was to be valued was stipulated to be November 10, 1967.
 8 There was no objection to Olson's testimony however, nor did defendants move to strike it. They did object to the admission of the comprehensive plan and it was not admitted. Moreover Olson also testified, without objection, that Borrowdale, one of the defendants, had presented a plan for a shopping center to the Planning Commission prior to the adoption of the comprehensive plan and that the proposed project was rejected by the Commission. Under these circumstances Olson's testimony was proper since the defendants chose to base their case on the contention that there was a reasonable probability that the property would be rezoned.
 9 Defendants' final contention is that petitioner's counsel deprived them of a fair trial by an inflammatory closing argument. No objection was interposed to any of the alleged inflammatory language. We have examined petitioner's closing argument however and find that it did not exceed the bounds of fair comment.
The judgment of the trial court is affirmed.
Judgment affirmed.
DRUCKER and LORENZ, JJ., concur.