THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Petitioner-Appellee, *v.* AN ASSOCIATION OF FRANCISCAN FATHERS OF THE STATE OF ILLINOIS, Defendant-Appellant.

Second District (1st Division)    No. 73-441

Opinion filed February 6, 1976.—Supplemental opinion filed upon denial of rehearing December 28, 1976.

James A. Dooley and James D. Murphy, Jr., both of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Frank S. Righeimer, Jr., Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

This is an eminent domain case in which the jury's determination of the just compensation to be paid the owner for land taken for a highway interchange turns in large part upon one particular instruction. Although the owner's appraisal witnesses were permitted to take into consideration the reasonable "probability" that the land would be rezoned from its then interim "institutional" classification, the court refused to give a tendered instruction approving this and, instead, gave an instruction which required that, in order to be considered, the rezoning be anticipated with reasonable "certainty." We conclude that this, compounded by the petitioner's attorney's final argument emphasizing "certainty" as opposed to "probability," constituted prejudicial error. We therefore reverse and remand the case for a new trial, without reaching the other grounds urged for reversal.

The property in question is a 9.828-acre parcel, part of 235 acres belonging to the Franciscan Fathers. The defendant's property, which is situated in Oak Brook, Illinois, runs from 31st Street on the north to 35th

Street on the south and from Route 83 on the east to Midwest Road on the west. It is at the very edge of Oak Brook.

The original quick-take proceeding was filed on April 28, 1970. An order was entered for the immediate vesting of title and possession and preliminary compensation was set at $196,500. The defendant was given leave to file a cross-petition for damages to the remainder. After an appeal by the defendant (3 Ill. App. 3d 503, 278 N.E.2d 111), the Department of Transportation filed action to acquire 951 feet of access rights along 31st Street and access routes along Route 83 from 31st to 35th Streets, immediately adjacent to the defendant's property. While the trial court originally ordered these two actions consolidated, he later vacated this order and ordered that the two cases be tried separately. Thus, it would appear that the value of the lost access rights was not properly before the jury in this case although the defendant's witnesses had to some extent considered the effect this loss would have upon the remaining land in determining the extent of the loss to the remainder. On the other hand, objections to certain questions were sustained because access was not a part of the case.

As stated before, the property in question is situated on the very outskirts of Oak Brook. To the south is Westmont. At the time of the trial the Franciscan property was used solely for church and school purposes and was Institutional—an admittedly interim classification. The property to the west is zoned R-1 and R-2, except that the property at the northwest corner which is used as a golf course is not zoned; the property to the north is zoned R-3 and R-4 (the residential rating having the highest density); the property on the northeast corner (directly opposite the corner condemned) is zoned B-1 (business); the property to the east (which is also directly opposite some of the condemned property), is zoned R-2; the property to the southeast is zoned R-1 but there was pending at the time of the trial a petition to rezone this property; the property immediately to the south, which is in Westmont is zoned for a mixture of commercial, industrial and apartment uses. That contiguous to the Franciscan property is in part at least designated for industrial purposes. At the southwest corner of that particular tract is a shopping complex. It is nearly entirely industry from 35th Street, across from the Franciscan Fathers, down to Ogden. Route 83 on the east side of the defendant's property is a heavily travelled road averaging over 24,000 vehicles per day south of 31st Sreet.

In the period from 1966 to 1971 three of the five requests for rezoning had been granted. The successful efforts were all by the Oak Brook Development Company. One of these changes was from R-1 (2-acre residential home sites) to ORA-1 (office, research and assembly).

Flexibility in zoning was also shown by a 1969 memorandum from the Chairman of the Plan Commission to the Village Trustees recommending the rezoning of certain residential property to ORA-1. Even a comprehensive plan adopted in 1973, while recommending that the property be developed into residential uses as a buffer to the extremely high densities proposed in Westmont using a planned unit development approach, also recommended that Oak Brook encourage convenient shopping areas.

Mr. Carl Gardner, a city planning and zoning consultant, testified for the defendant that the highest and best use for the corner part (about 25 acres) before the taking of part of the land would have been as a local shopping complex (B-1 zoning) with a gas station at the corner, retail establishments and related office buildings. Such rezoning was reasonably probable because the property is located very advantageously for shopping center use; it is comparable almost identically with the B-1 classification of the property diagonally across from it; with the R-3 and R-4 zoned property there is a tremendous amount of residential area. The zoning ordinance is flexible and subject to adjustment to bring it into accord with existing conditions. He also testified that the highest and best use of the western portion of the property before the taking was R-4. Since the taking, a shopping center would no longer be feasible, and R-4, the most intensive residential use permitted, would be the highest and best use. Another defense witness, Mr. Voosen also testified that the property should be used for a combination of B-1 and R-4 uses.

Most of the defendant's appraisal witnesses testified that the highest and best use of the property, or at least part of it, including that condemned, based on a reasonable probability of rezoning was, before the taking, as a B-1 property. Mr. Feulner testified that before the taking, the best use of the approximately 35 acres of the whole tract was for a commercial center. Mr. Feulner valued the entire tract at $9,428,000 and the buildings at $7,830,000; the total value after the taking would be $15,921,760. The value of the land taken was $786,240; the damage to the remainder $550,000, caused by loss of access to property off of 31st Street, and loss of frontage from 31st to 35th Street. The State's motion to strike the valuation testimony because of the separate valuation of the land and the buildings was denied.

However, Mr. Doss' valuation ($1,070,000 or $1,177,000 for the 10-acre piece) was stricken because he only appraised the land that was taken and did not know the total number of acres in the entire property. Mr. Doss, who was a general manager of the Del E. Webb Corporation, one of the partners of the Oak Brook Development Company which had owned originally about 3,000-3,500 acres of Oak Brook, had testified that the best use of the property was as B-1 since it is across the street from B-1

property. He also testified that the diamond interchange would detrimentally affect the corner because no one wants to live next to a diamond interchange; there are traffic problems in and out of the property and there will be a problem of drainage.

Mr. Dana, who also had been connected with the Del E. Webb Corporation, also testified that the best use of the corner (about 25 acres) based on a reasonable probability of rezoning would be as a B-1 use. After the taking, because of lack of access the area would not be used commercially and an R-4 use would be the best. Mr. Dana valued the property taken at $110,000 per acre and estimated the damage to the remainder to be $400,000.

Mr. O'Leary, a real estate broker, considered the highest and best use of the land, based on the reasonable probability of rezoning, to be ORA-1 (office, research and assembly). He valued the part taken (as part of the whole) at $856,000. He estimated the damage to the remainder at $200,000. The overhead structure as well as the limited access would have detrimental effects on the selling price.

The last appraisal witness, for the defendant, Mr. Enright, testified that the highest and best use of the property would be as a planned unit development. The corner of 31st Street and Route 83 would be a prestige service station location, the section fronting on Route 83 would be B-1 (this is one of the most desirable business locations because of the increase of traffic on Route 83 as well as on 31st Street); certain other areas should be developed as R-3 or R-4 uses. Mr. Enright valued the land taken at $608,000 and estimated the damages to the remainder at $340,000. The damage was due to the fact the property after the taking would have no business value as people do not like to drive up and down frontage roads for business property. Moreover, no informed purchaser would build a single-family residence brand new overlooking Route 83 as people today do not want to overlook heavily traveled property. In addition, he testified that if there was damage to the remainder on the three other corners, there had to be damage to this one. It is a similar type taking. Each one is damaged, depending on its development and its use. He also testified that business property is one of the main reasons why Oak Brook is so desirable and so stable. People lately have become extremely tax conscious as far as the real estate tax goes. Commercial property is a must for a residential community and so is industrial.

The petitioner's valuation witnesses on the other hand all testified that a rezoning to business or commercial was improbable. With one exception, they valued the property as being used for residential uses although they merely assumed such uses were possible and neither indicated that they were possible under the present zoning nor testified that there was a reasonable probability of it being rezoned residential.

Their valuations ranged from $157,000-$180,000 for the part taken; there was no damage to the remainder. The exception was Mr. Fitts. He valued the property as institutional or low-density residential; he valued the part taken at $196,000 with no damage to the remainder.

Besides the testimony of the valuation experts, various sales were introduced into evidence. Also Mr. Urhausen, the village manager, testified that a new comprehensive plan had been approved in September 1971, and that it designated the property as residential (Actually these statements were misleading—the plan was finally approved by the whole council in 1973 although the jury must have inferred that it was effective in 1971 and the plan merely assumed the property eventually would be used residentially.) Defense counsel's objection to the question whether the property could be rezoned business was of course sustained and the jury properly was instructed to disregard it.

The jury found that just compensation for the taking was $196,560 and damages to the remainder to be $22,575.

This brings us to the owner's first contention—that the court's instructions were prejudicially erroneous on the only issue in the case.

■■ The trial court ruled that there was sufficient evidence from which could be inferred a reasonable probability of rezoning. We agree. The current zoning, institutional, was concededly an interim zoning and rezoning to something else is inevitable. There was testimony the ordinance was flexible. Out of the five applications for rezoning in recent years, three have been granted; one of these was from a residential to a nonresidential use. There have already been at least two zoning ordinances (1959 and 1966) and the comprehensive plan adopted three years after the taking of this property indicated satisfaction with the large areas of low-intensity zoning. Despite the testimony of the petitioner's witnesses (none of whom testified that there was a reasonable probability the land would be rezoned residential and if so whether it would be rezoned low density or high density (R-4 residential)), there is an obvious issue of fact whether there is a reasonable probability the property would be rezoned business or commercial. Mr. Enright testified that business and industry are a must for a residential community. There was testimony from other witnesses as to a need of land for business and commercial uses; indeed there were less than 6 acres of land zoned ORA still available. Although some of this testimony was disputed by witnesses for the petitioner; this dispute does not make it any less a question of fact for the jury to resolve. While most of the property in Oak Brook which bordered on the Franciscan Fathers' property was zoned residential, most in fact was not used for housing. The property to the west was used for golf courses; the property to the east was vacant. With the unused residential

land available, a rezoning of the subject property residential might be considered unreasonable, particularly when one takes into consideration the large amount of industrial and business property including a service station immediately to the south and the existence of a heavily travelled highway on the eastern border, all of which would render the property undesirable for residential purposes. Nor is it clear that the occupied portion of the neighboring residential areas would be adversely affected by a rezoning to ORA or B-1. At present, Briarwood Lakes (which borders the Franciscan property on the north), has to the east B-1, R-4 (the highest density residential property and identical to that of Briarwood itself), and ORA property; to the north the property is zoned ORA; to the west and the southwest lie the golf courses.

■■ Nevertheless, while the trial court agreed as to the sufficiency of the evidence as to the reasonable probability of rezoning, it refused to give the following instruction tendered by the defendant because the IPI Civil No. 300.85 recommends that no instruction be given on the effect of a possible change in zoning:

> "When I use the expression 'Highest and Best Use' of property, I mean that use which would give the property its highest cash market value on April 28, 1970.
> This may be a use to which it was then adaptable and which could be anticipated with such reasonable certainty that it would enhance the market value on that date, including the reasonable probability of rezoning."

It instead gave IPI Civil No. 300.84, which as adapted reads:

> "When I use the expression 'Highest and Best Use' of property I mean that use which would give the property its highest cash market value on April 28, 1970. This may be the actual use of the property on that date or a use to which it was then adaptable and which would be anticipated with such reasonable certainty that it would enhance the market value on that date."

It is clear that in this State, while the proper measure of value is not the highest and best use of the land regardless of zoning (see *Board of Junior College District No. 515 v. Wagner* (1971), 3 Ill. App. 3d 1006, 279 N.E.2d 754), where there is sufficient evidence the jury may consider the reasonable "probability" of a zoning change in determining the highest and best use of the property. (*Park District of Highland Park v. Becker* (1965), 60 Ill. App. 2d 463, 468, 208 N.E.2d 621; *Department of Public Works and Buildings v. Rogers* (1968), 39 Ill. 2d 109, 113, 233 N.E.2d 409; *Lombard Park District v. Chicago Title & Trust Co.* (1968), 103 Ill. App. 2d 1, 7, 242 N.E.2d 440; *Board of Junior College District No. 515 v. Wagner* (1971), 3 Ill. App. 3d 1006, 1010, 279 N.E.2d 754; *Department*

*of Transportation v. Western National Bank* (1974), 22 Ill. App. 3d 47, 53, 316 N.E.2d 663; *Lake County Forest Preserve v. Reliance Standard Life Insurance* (1975), 29 Ill. App. 3d 145, 150, 329 N.E.2d 344; *Department of Public Works & Buildings v. Exchange National Bank* (1975), 31 Ill. App. 3d 88, 105, 334 N.E.2d 810.) An instruction as to the consideration of the reasonable probability of rezoning does not, as comment in IPI—Civil No. 300.85 asserts, single out one portion of the evidence for special comment. Rather, it informs the jury as to the scope of uses which may be considered and as to the degree of proof required as to rezoning (reasonable probability not reasonable certainty). The IPI instructions are not binding on the court where they do not accurately state the law. (Supreme Court Rule 239, Ill. Rev. Stat. 1973, ch. 110A, par. 239.) In this instance it would appear that the comment was written before the line of cases above was handed down and thus simply does not reflect the current rule in Illinois.

Whether the highest and best use of the land was commercial or residential, considering the reasonable probablity of rezoning was the central issue in the case. It was critical therefore that the jury be instructed accurately on this issue. And there is a great difference between the highest and best use in the light of the reasonable *probability* of rezoning and a use which would be anticipated with such reasonable *certainty* that it would enhance the market value. A probability is not a certainty.

The prejudice caused by this error was compounded by the petitioner's argument to the jury. After defense counsel had argued to the jury as to the reasonable probability of rezoning, petitioner's counsel argued to the jury in part as follows:

> "At the outset, Mr. Dooley tells you that you have to consider the highest and best use of this property for whatever use.
> This is not true at all.
> I know, because we have discussed it, but I am positive the Court is going to instruct you that it is a use that is within a reasonable certainty."

And later in his argument, counsel commented:

> "Now, the reasonable probability of rezoning is the defendant's theory of the case.
> They say, 'it is reasonable that we can have all the other uses that will dictate a million dollar value or an eight hundred thousand dollar value.'
> But it is not the reasonableness. I think the instruction says reasonable certainty.
> Now, how can you have a probability and a certainty at the same time?
> You can't."

And again:

> "It is what could be expected on April 28th, with reasonable certainty, not the probability * * *."

And finally:

> "I ask that you ladies and gentlemen bring in a verdict which represents the fair market value on that date, unaffected by what you have heard as to reasonableness and future use and all that, of between one hundred sixty and two hundred thousand dollars."

We therefore reverse the judgment and remand the case for a new trial not inconsistent with the views herein expressed. We do not reach the other grounds urged for reversal.

Reversed and remanded.

GUILD, P. J., and SEIDENFELD, J., concur.


## SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

In its petition for rehearing, the petitioner contends (1) that the trial court erred in finding a reasonable probability of rezoning to a commercial or office use; (2) that this court erred in ruling that the jury should have been instructed as to the reasonable probability of rezoning because such an instruction would only serve to single out one portion of the evidence; (3) that the jury was required to find a reasonable certainty that the property was adaptable for the proposed use and that the test of reasonable probability is only the standard for the admission of evidence of rezoning; and (4) that the defendant's proferred instruction was erroneous in that it did not point out what zoning was to be considered or advise the jury that it should consider reasonable probability of rezoning only to the extent that it affected the market value on April 28, 1970.

We adhere to the holding in the original opinion that the trial court properly determined that there was sufficient evidence of the reasonable probability of rezoning to a nonresidential use to permit the defendant's experts to testify to the market value based on such a probability. See *Department of Transportation v. Western National Bank,* 63 Ill. 2d 179, 184-85 (1976).

We also agree that the argument of the petitioner to the effect that the jury should bring in a verdict "unaffected by what you have heard as to reasonableness and future use and all that" under the particular circumstances was prejudicial.

■■■ However, we are of the opinion that the giving of IPI Civil No.

300.84, including the bracketed material, was proper. The error below was the court's refusal to give any instruction on the reasonable probability of rezoning. That error was compounded by the petitioner's argument. As noted in the opinion, the court's refusal was based upon the recommendation, at IPI Civil No. 300.85, that no instruction be given on the effect of a possible change in zoning.

The just compensation to which the property owner is entitled is the fair market value of the property at its highest and best use on the date of the petition. See IPI Civil No. 300.80, and Comment.

IPI Civil No. 300.84 not only defines "highest and best use," but also accurately instructs the jury that it may give consideration to evidence indicating that the highest and best use of the property is a use other than the actual use on the date of the petition. The jury may give consideration to another use if the property was "then adaptable" to that use and the use in question "could be anticipated with such reasonable certainty that it would enhance the market value" on the date of the petition. The instruction is designed to discourage compensation based upon uses which are speculative, imaginary, or merely possible. Compare *City of Chicago v. Lord* 276 Ill. 571 (1917), with *City of Chicago v. Sexton,* 408 Ill. 351 (1951).

We also have no quarrel with the IPI policy, noted in the comment to IPI Civil No. 300.85, of avoiding singling out one portion of the evidence for particular comment in jury instructions.

We disagree, however, with the petitioner's contentions that the test of reasonable probability of rezoning is only a standard for the admission of evidence and that an instruction on the subject would only serve to single out one portion of the evidence.

Since 1968, the question of the reasonable probability of rezoning has occupied a position in the trial of an eminent domain proceeding different from evidence of the possibility of obtaining other legislative or administrative action which will enhance the market value of the property. See, *e.g., South Park Commissioners v. Ayer,* 237 Ill. 211 (1908); *Chicago & Western Indiana R.R. Co. v. Heidenreich,* 254 Ill. 231 (1912); and *City of Chicago v. Sexton,* 408 Ill. 351 (1951).

In the wake of the adoption of modern comprehensive zoning ordinances, the Illinois Supreme Court impliedly recognized the effect of zoning restrictions on the determination of fair market value at the highest and best use. See *Forest Preserve District v. Kercher,* 394 Ill. 11, 14, 21-23 (1946), and *Department of Public Works & Buildings v. Drobnick,* 14 Ill. 2d 28, 32-33 (1958).

In *Park District v. Becker,* 60 Ill. App. 2d 463, 468 (1965), this court considered the question of "whether in considering the highest and best use of the land for determining the just compensation due the owner, a

use can be contemplated which would not be permitted under existing zoning restrictions" and held that the jury might take into consideration the reasonable probability of rezoning in the near future.

However, the rule in *Becker* was subsequently refined. In *Department of Public Works & Buildings v. Rogers*, 78 Ill. App. 2d 141, 144-45 (1966), this court held that the property owners were entitled to present evidence of a recent modification of the municipality's zoning ordinance in support of their theory of the reasonable probability of rezoning. The supreme court affirmed (*Department of Public Works & Buildings v. Rogers*, 39 Ill. 2d 109, 113-15 (1968)), noting that the failure of the trial court to admit evidence tending to show flexibility of the ordinance effectively precluded the defendants "from arguing objective evidence to the jury in support of their theory of the reasonable probability of rezoning" while permitting petitioner to make a strong argument against the probable rezoning theory (*Department of Public Works & Buildings v. Rogers*, 39 Ill. 109, 115 (1968)).

Subsequently, in *Lombard Park District v. Chicago Title & Trust Co.*, 103 Ill. App. 2d 1, 6 (1968), this court noted, "Possible rezoning is relevant only if it reflects some value in the land because of a present capacity for future use which may be anticipated with reasonable certainty and which may be made the basis of an intelligent estimate of value."

Accordingly, it has been held that the burden of proof of the reasonable probability of rezoning is on the landowner. (*Department of Transportation v. Western National Bank*, 63 Ill. 2d 179, 185 (1976).) Before evidence based on the theory of probable rezoning may be presented to the jury, the trial court must determine whether there is sufficient evidence of factors which would permit a jury to conclude that there is a reasonable probability of rezoning (*Lombard Park District v. Chicago Title & Trust Co.*, 103 Ill. App. 2d 1, 8-9 (1968); *Board of Junior College District No. 515 v. Wagner*, 3 Ill. App. 3d 1006, 1010 (1971); *Lake County Forest Preserve District v. Reliance Standard Life Insurance Co.*, 29 Ill. App. 3d 145, 150 (1975); and *Department of Conservation v. First National Bank*, 36 Ill. App. 3d 495, 506 (1976)), and that such probability would enhance the market value (*Department of Conservation v. First National Bank*, 36 Ill. App. 3d 495, 500 (1976)). In the absence of a proper foundation the trial court may exclude all evidence and opinions of value based on a use permitted only by rezoning. *Lombard Park District v. Chicago Title & Trust Co.*, 103 Ill. App. 2d 1, 9 (1968); *Foss Park District v. First National Bank*, 125 Ill. App. 2d 276, 280 (1970); *Board of Junior College District v. Wagner*, 3 Ill. App. 3d 1006, 1010 (1971); and *Department of Conservation v. First National Bank*, 36 Ill. App. 3d 495, 506 (1976).

However, once the trial court has determined that there is sufficient

evidence of the reasonable probability of rezoning to warrant submitting the issue to the jury, it is for the jury, in considering the weight to be given to valuation testimony based upon the reasonable probability of rezoning, to determine whether there was a reasonable probability of rezoning, and if so, its effect on the fair market value of the property (*Lombard Park District v. Chicago Title & Trust Co.*, 103 Ill. App. 2d 1, 9-10 (1968); *cf. Department of Public Works & Buildings v. Exchange National Bank*, 31 Ill. App. 3d 88, 105 (1975)); and both parties may present evidence designed to convince the jury of the likelihood or unlikelihood of rezoning (*Board of Junior College District No. 515 v. Wagner*, 3 Ill. App. 3d 1006, 1010 (1971); *cf. Department of Public Works & Buildings v. Rogers*, 39 Ill. 2d 109, 113-15 (1968)).

Therefore, it appears that before a jury may consider valuation testimony based upon a highest and best use to which the property was then adaptable and which could have been anticipated with such reasonable certainty that it would have enhanced the market value on the date of the petition, were it not for the fact that the use in question was unpermitted by the applicable zoning ordinance, the jury must be convinced that a reasonable probability of rezoning existed on the date of the petition. Stated otherwise, before a jury may even reach the question of whether a use which was unpermitted by the zoning ordinance otherwise meets the criteria of a highest and best use, the jury must find that there was a reasonable probability of rezoning.

Since the question of the reasonable probability of rezoning is, in an appropriate case, an issue on which the jury must make a finding of fact, we believe that the jury should be accurately instructed on the law as to the necessity and effect of making that finding. The importance and necessity of such an instruction is clear in the context of the case at bar. Here, there was conflicting testimony as to both the highest and best use of the property and the likelihood of rezoning. Witnesses for both sides were asked questions concerning the "reasonable probability" of rezoning. Yet the jury was given no instruction incorporating that phrase which permitted counsel for the petitioner to make a skillful argument emphasizing the phrase "reasonable certainty" from IPI Civil No. 300.84 and to argue, "Now, how can you have a probability and a certainty at the same time? You can't."

Whenever the Illinois Pattern Jury Instructions do not contain an instruction on a subject on which the jury should be instructed, a simple, brief, impartial instruction may be given. (Ill. Rev. Stat. 1969, ch. 110A, par. 239.) It fairly appears from the record that the jury, without any guidance from the instructions on the law regarding reasonable probability of rezoning, may have believed that it could not consider unpermitted uses unless the rezoning was reasonably certain. This clearly

is not the law and a supplemental instruction on rezoning should have been given.

In a case in which there is an issue as to the reasonable probability of rezoning with valuation testimony based in part upon the reasonable probability of rezoning, such an instruction, given in addition to and with proper reference to IPI Civil No. 300.84, would inform the jury of the necessity of making a finding that there was in fact a reasonable probability of rezoning on the date of the petition before making a determination of just compensation based upon a highest and best use which was unpermitted by the applicable zoning classification on the date of the petition. *Cf. Dolezal v. City of Cedar Rapids,* 209 N.W.2d 84, 89 (Iowa 1973); *Community Redevelopment Agency v. Henderson,* 251 Cal. App. 2d 336, 345, 59 Cal. Rptr. 311, 316 (1967), overruled on other grounds in *Merced Irrigation District v. Woolstenhulme,* 4 Cal. 3d 478, 495, 483 P.2d 1, 12, 93 Cal. Rptr. 833, 844 (1971).[1]

Petitioner's final contention on rehearing that defendant has waived its right to a separate instruction on the probability of rezoning because of a failure to submit a proper instruction is not persuasive on the record before us. In the context of the discussions before the trial judge, it became apparent that no instruction on the probability of rezoning would be given in deference to the IPI recommendation. In view of the unduly advantageous use made by petitioner's counsel in arguing a requirement of "reasonable certainty" to the jury based on the instruction given, the defendant in effect was deprived of any reasonable opportunity to persuade the jury that the probability of rezoning was material. The application of the rule of waiver in this context would sanction an unfair proceeding.

The petition for rehearing is denied. However, the petitioner's alternative motion for certificate of importance is allowed.

GUILD, P. J., concurs.

Mr. JUSTICE HALLETT took no part in the consideration or decision respecting the petition for rehearing and the supplemental opinion.

---

[1] We note that in one jurisdiction a separate instruction on rezoning was held unnecessary in the context of a set of instructions which utilized the phrase "reasonably probable" in defining the permissible consideration of uses to which the property was adaptable. (See *Reller v. City of Lincoln,* 174 Neb. 638, 119 N.W.2d 59, 63-64 (1963).) We have given some thought to the idea that a similar result might be obtained if IPI Civil No. 300.84 were modified to read "reasonable probability" instead of "reasonable certainty." However, this approach does not appear to be consistent with the language used in the Illinois cases on which IPI Civil No. 300.84 is based. See Comments, IPI Civil No. 300.84 (2d ed. 1971).